ERIE RAILROAD COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS AND BOARD OF CHOSEN FREEHOLDERS OF HUDSON, DEFENDANTS.

Submitted December 3, 1914—Decided August 12, 1915.

1. It is peculiarly within the province of the board of public utility commissioners to determine whether there is any peril at a railroad crossing and the nature of the protection necessary to obviate such peril. Such determination will not be interfered with if there is any testimony upon which its determination of fact can rest.

2. The duty imposed by the board of public utility commissioners upon a railroad to provide safeguards at a railroad crossing should not be made more onerous than the necessity for the protection of life, limb and property demands. Therefore, an order made by the board of public utility commissioners requiring that a railroad keep a flagman at its crossing at periods of time when there are no trains running, will be set aside.

3. The power conferred upon the board of public utility commissioners by section 22 of the act concerning public utilities (*Pamph. L.* 1911, *p.* 383), is a delegation of the police power and does not give it the judicial power to regulate easements as conferred upon the Court of Chancery by the state constitution.

On *certiorari.*

Before Justices SWAYZE, PARKER and KALISCH.

For the prosecutor, *Collins & Corbin, George S. Hobart* of counsel.

For the defendants, *Frank H. Sommer,* attorney of board of utility commissioners; *John A. Dennin,* attorney of board of chosen freeholders of Hudson county; *James J. Murphy* and *Joseph M. Norman* of counsel.

The opinion of the court was delivered by

KALISCH, J. The board of utility commissioners, upon a petition filed by the board of chosen freeholders of the county of Hudson and after a hearing, made an order which, among other things, commanded the prosecutor "to keep on duty, during the twenty-four hours of each day of the week, at the crossing of the Belleville turnpike and the track of the Newark branch of said company, and at the crossing of the said branch of said company, and at each of said crossings, a flagman to give warning with a flag or flags during the daylight hours and with a lighted lamp or lamps during the hours of darkness of the approach of any and all locomotives, cars or trains of cars to cross the Belleville turnpike at said points."

This part of the order is complained of by the prosecutor, as being, under the evidence and the safeguards then existing at the crossings mentioned in the order, unreasonable.

The other objection raised and argued in the brief of counsel for the prosecutor against the validity of the order is that the statute under which the order was made is unconstitutional, in so far as it deprives the Court of Chancery of jurisdiction over the regulation of the use of easements.

Under the first objection leveled against the validity of the order upon the ground that it is unreasonable, it is contended by counsel for the prosecutor that in view of the undisputed proof in the case establishing the condition of the crossings prior to and at the time the order was made, as to the number of running trains, the amount of vehicular and pedestrian traffic, and the safeguards in use, over and at the crossings, and the opportunity of observing approaching trains in either direction, nevertheless, the situation developed, regarded most strongly against the prosecutor, did not warrant an order for the maintaining of a flagman by the prosecutor, during the twenty-four hours of the day, at each crossing.

The proof established that at each of the crossings there was the ordinary crossing sign warning the traveler of the presence of the railroad tracks; then on the right hand of the road about five hundred feet from the crossing there was a sign, "Railroad Crossing, 500 feet." Of course, these signs could not be of much service in the night time.

In addition there was located on either side of the tracks, at a distance of one hundred feet therefrom, a bell operated by electricity and controlled through a track circuit working through a relay. At the crossings the track circuit is two thousand six hundred feet on either side of the crossing, which would start the bell ringing when the train was that distance from the crossing. There was testimony, however, on this point before the board which tended to establish that the bells did not always ring at the approach of a train, and also that there had been several accidents at the crossings.

The testimony, as to the extent of view that may be had and the facility with which it can be made, in either direction, by a traveler approaching the crossings in the day or night time, is conflicting, but since there is evidence which will

reasonably support the finding of the board against the contention of the prosecutor, such finding will not be disturbed.

From the testimony it appears that the condition which prevails at the crossings is, that on the Newark branch on week days there are fourteen westbound and sixteen eastbound trains; on Sundays nine west and ten eastbound trains; on holidays the number of westbound trains is reduced from fourteen to twelve, and the eastbound from sixteen to twelve. A similar condition exists at the Greenwood Lake branch crossing, with more trains running over that crossing in either direction.

The traffic by wagons and automobiles and on foot over the crossings is much greater on Sundays than on weekdays, as appears from actual observations and count made. But after all the amount of traffic over these crossings bears only relatively on the nature of the protection to be provided. It is not the number of or character of the vehicles, or the number of persons, or the amount of property that may be subject to peril that is to be considered by the board, but whether there is any peril at all, and if there be any, do the safeguards afforded measure up to the danger to be encountered. It will be at once recognized that these matters are peculiarly within the province of the board to determine and their judgment will not be interfered with, if there is any testimony upon which its determination of fact can rest.

And viewing the case in this light we have been unable to find any evidence which will reasonably support that part of the order of the board which directs the prosecutor to keep on duty a flagman during the twenty-four hours of each day of the week at the crossings in question. We think the order in that respect is too broad. The duty imposed on the prosecutor and to be performed by it should not be made more onerous than the necessity for the protection of life, limb and property demands.

There can be no good reason for obligating the prosecutor to keep a flagman at each of the crossings at periods of time when there are no trains running.

The time tables in evidence showing the running of trains

on both branches and over the crossings make it manifest
that there is no good reason for the presence of a flagman at
the crossings during the twenty-four hours of each day.    The
order should have been limited to keep on duty a flagman at
the crossings covering the operations of all trains over such
crossings.

· We now come to a consideration of the claim made by the
counsel for the prosecutor that the statute under which the
order is made is unconstitutional in so far as it deprives the
Court of Chancery of its exclusive jurisdiction over the regu-
lation of the use of easements.

The argument made to support this contention is that by
article 6, section 1, of the constitution of the State of New
Jersey, the judicial power is vested in the courts therein men-
tioned, one of which is the Court of Chancery, and that one
of its inherent constitutional powers is exclusive jurisdiction
over the regulation of easements, and that, therefore, section
22, of the act concerning public utilities (*Pamph. L.* 1911, *p.*
383, *ch.* 195), as amended by *Pamph. L.* 1912, *p.* 111, *ch.* 80,
which, in substance, provides for three cases in which the
board may make an order for the provision of safety devices—
(*a*) when a public highway and a railroad cross one another;
(*b*) when a public highway and a street railway cross one an-
other, and (*c*) when ingress or egress to any railroad station
is obstructed by its tracks, trains or engines of any other rail-
road company, intends to confer power on the board to reg-
ulate easements in certain specified cases, and hence, is an
encroachment upon the constitutional powers of the Court of
Chancery.

The argument is founded upon an assumption that the
regulation of the method of protecting life and limb at grade
crossings of a public highway and a railroad is necessarily a
regulation of an easement.    The fallacy of the argument lies
in the assumption that section 22 confers upon the board
judicial power to regulate conflicting easements.    There is
no such power conferred.    There is no such inference to be
drawn from the language used.    The object sought to be at-
tained is public safety.    The legislature has clearly defined

the powers of the board in that regard. The powers conferred are administrative and the fact that the board can put the provisions of the statute into effective operation in any case where there are facts to which the statute applies, does not make the power exercised judicial. All our statutory special tribunals, such as the health boards, boards of education, &c., are clothed with administrative powers and exercise *quasi*-judicial functions, yet no one has yet made a successful attack upon the constitutionality of the statutes conferring such powers upon the ground that the powers conferred can only be constitutionally exercised by our courts of law. Of course, if a statute attempted to oust a constitutional court of its jurisdiction over the matter it would be void. There is nothing in section 22 of the statute under consideration that in any way attempts to oust the Court of Chancery of its jurisdiction to deal with conflicting easements.

A word more may be said on this subject, and that is, that it is difficult to conceive of a statute of police regulation which does not in some way, in its enforcement, affect the private use and enjoyment of property, and oftentimes of individual liberty.

In many instances matters pertaining to the public safety, health, morals, &c., have been as a matter of legislative policy, in the interest of the public, left to be conserved by special statutory tribunals created for that particular purpose, in that matters affecting life, health or morals may be summarily attended to and dealt with.

It is quite obvious that it would be of no practical value to make regulations regarding such matters unless the board entrusted with the care of the subject had power to give effect to such regulations.

For the reason that the order made by the board is too broad in that it requires the prosecutor to keep a flagman on duty at each of the crossings during twenty-four hours of each day, as has been pointed out, that part of the order will be set aside so that it can be modified by the board in conformity with the views herein expressed.