ST. LOUIS INDEPENDENT PACKING CO. v. HOUSTON, Secretary of Agriculture, et al.

(District Court, E. D. Missouri E. D.    March 20, 1916.)

No. 4156.

1. CONSTITUTIONAL LAW &73—MEAT INSPECTION ACT—REGULATIONS BY DEPARTMENT.
   Under the power conferred on the Secretary of Agriculture by Meat Inspection Act March 4, 1907, c. 2907, 34 Stat. 1260 (Comp. St. 1913, § 8681 et seq.), to make regulations to carry out the purposes of the act to prevent the sale in interstate commerce of food which is unsound, unwholesome, or otherwise unfit for human use, the determination by the Secretary that an article is within such prohibition is not reviewable by the courts.
   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 134-137; Dec. Dig. &73.]

2. FOOD &1—MEAT INSPECTION ACT—REGULATIONS BY DEPARTMENT.
   Order No. 211, promulgated by the Secretary of Agriculture July 15, 1914, under the Meat Inspection Act, which provides that sausage shall not contain cereal in excess of 2 per cent. nor water or ice in excess of 3 per cent., is within the powers of the Secretary, valid, and enforceable; also *held* on the evidence as a matter of fact that the addition of cereal or water in larger quantities tends to render the sausage unwholesome, especially if it is kept any considerable length of time before use.
   [Ed. Note.—For other cases, see Food, Cent. Dig. §§ 1, 2; Dec. Dig. &1.]

In Equity. Suit by the St. Louis Independent Packing Company against David F. Houston, Secretary of Agriculture, A. D. Melvin, Chief of the Bureau of Animal Industry, and James J. Brougham, Chief Inspector of such Bureau at St. Louis. On final hearing. Decree for defendants.

For prior opinion, see 215 Fed. 553, 132 C. C. A. 65.

Franklin Ferriss, J. H. Zumbalen, and Henry T. Ferriss, all of St. Louis, Mo., for plaintiff.

Arthur L. Oliver, U. S. Atty., and W. H. Woodward, Asst. U. S. Atty., both of St. Louis, Mo., for defendants.

DYER, District Judge.    The complainant's bill now stands as it did when first presented to the court on an application for a mandatory injunction to restrain the defendants from refusing to mark as "Inspected and passed" all sausage manufactured by complainant, and to have the court declare void

a regulation promulgated by the Secretary of Agriculture on February 28, 1913. There has been no change whatever in any of the averments. It was upon the bill as it now stands that the court refused an injunction, and it was upon the averments in that bill alone that the Court of Appeals acted in reversing the judgment of this court. The Court of Appeals, in the opinion filed by it (215 Fed. 553, 132 C. C. A. 65), said:

"Basing all our statements upon the allegations of the bill, *which have never been controverted*, sausage and cereal which contain no dyes, chemicals, preservatives, or ingredients which render such meat or meat food products unsound, unhealthful, unwholesome, and unfit for human food, and which is not by any other reason unsound, unhealthful, unwholesome, or unfit for human food, is not subject to condemnation under the meat inspection law, except as hereafter indicated. * ∗ * The question is simply: Could he [the Secretary of Agriculture] prohibit the making of a compound, which was sound, healthful, wholesome, and free from dyes, chemicals, preservatives, or ingredients which render such unfit for human food by a mere regulation? We are constrained to say that he cannot."

The converse of this proposition is necessarily this: That if such product in the opinion of the Secretary be unsound, unhealthful, unwholesome, and unfit for human food, it is within the power conferred upon him by law to prohibit, by regulation, such product from being sent in interstate commerce. Assuming that all the foregoing statements be true, what is the present attitude of the case now before the court? After the cause came back to this court, the defendant Houston (who had not prior thereto been served with process, and who had not entered his formal or voluntary appearance), was duly served with process. Thereafter, on the 21st of June, 1915, Houston, with his codefendants, filed answers to the bill. Then for the first time the allegations of the bill were *"controverted."* The cause was then brought to a hearing on the bill, answers, and proof. The answers of the defendants, while separate, are practically one and the same. Oral arguments by counsel were made and briefs by counsel were submitted.

The answer of the defendant Houston seems to be full and complete, and puts in issue nearly all of the material allegations of the bill. It will be only necessary to consider what seem to be the most important issues to be determined by the bill and answer. The answer to the fifth paragraph of the bill is as follows:

"Fifth. The defendant, for answer to the fifth paragraph of the bill, admits that a portion of the sausages manufactured by plaintiff are compounds and mixtures composed and manufactured in part from meat of hams, pork, spices, and cereals, if the sausage is of the type known as 'fresh pork sausage,' and from beef, ham, pork, cereals, spices, and other ingredients, if under the style known as 'Bologna' or 'Frankfurt' sausage; that the amount of cereal used in said compounds and mixtures composing said sausage is as much as from 1 to 10 per cent. of cereals, and that varying amounts of water are also used. And defendant alleges that the amount of water so used by plaintiff often equals 20 to 40 per cent. of the finished product.

"And the defendant, further answering said paragraph, *denies* that the cereal so used by plaintiff is wholesome, denies that the amount of water used depends upon the meat used, or the amount necessary for the compounding or mixture of the various ingredients; denies that said cereal is composed of ground grain; *denies that the sausages manufactured by plaintiff as alleged therein are sound, healthful, or wholesome; and denies that said sausages contain no ingredients which render the sausages unsound, unhealthful, unwholesome, or unfit for human food.*

"And defendant, further answering said paragraph, states that cereal is a substance which is inferior to the other ingredients composing the sausages manufactured by plaintiff."

Answering the eleventh paragraph of the bill, the answer in part contains the following:

"Defendant *further denies that the amount of cereal and water so used in the manufacture of said sausage did not in any way impair the food value of the product or its healthfulness or wholesomeness as a food.*"

The following denial is made to the twelfth paragraph of the bill:

"Defendant further *denies* that the said meat food products mentioned·in said paragraph are *sound, healthful,* wholesome, or *fit for human food.*"

Answering the fourteenth and last paragraph of the bill, the defendant Houston says:

"Defendant, further answering, states that the manufacture and sale of a product as sausage, which product contains added cereal and water in quantities as described in plaintiff's bill, or in any quantities in excess of the amount designated in said regulation, effective April 1, 1913, is.false and deceptive; that the ordinary consumer of sausage manufactured by this plaintiff has no knowledge or information that sausage contains cereal and added water, that such information is not conveyed to persons who purchase plaintiff's sausage at retail by any method of marking or branding now or heretofore in use by plaintiff, and that it is *impracticable* and *impossible in the* ordinary course of manufacture and distribution of sausage to mark or brand the same so that the purchaser at retail or the consumer will be informed as to the amount of cereal and water added thereto.

"Defendant, further answering, states that the addition of cereal and water to sausage has for many years been condemned and disapproved by many authoritative writers and various well-known organizations familiar with and concerned in the manufacture and sale of sausage in this country and other countries; that such views and opinions of such writers and *organizations* have been widely published and discussed, and that this plaintiff knew, or in the reasonable and lawful conduct of its business ought to have known, of such views and opinions; and that such use of cereal and water in the manufacture of sausage constitutes a fraud and deception upon the purchaser and consumer, and the plaintiff as a manufacturer of sausage was and is in duty bound to conform its business to the requirements and provisions of said act of Congress and of said regulations of the Secretary of Agriculture, and that because of these facts no surprise, hardship, or injustice has been or will be sustained by or done to this plaintiff by the enforcement of this regulation.

"Defendant, further answering, states that since the filing of this suit, and previous to the service of the subpœna on him in said cause, the regulations set forth in paragraph 9 of the bill had been superseded by regulations governing the meat inspection of the United States Department of Agriculture, contained in B. A. I. Order 211, which were promulgated on July 15, 1914, by the Secretary of Agriculture, pursuant to the authority conferred upon him by the said Meat Inspection Act, and effective on and after November 1, 1914, and that a copy of said regulations will be produced at the hearing of this cause."

The evidence shows that the regulations effective April 1, 1913, were annulled and superseded by other regulations effective November 1, 1914. The latter were in force at the time the defendant Houston was served with process and at the time he filed his answer. The regulations made effective April 1, 1913, were preceded by the following:

"Washington, D. C., Feb. 28, 1913.

"For the purpose of preventing the use in interstate or foreign commerce of meat or meat food products under any false or deceptive name, under the authority conferred on the Secretary of Agriculture by the provisions of the act of Congress, approved June 30, 1906 (34 Stat. 674), Regulation 18 is hereby amended by the addition of sections 15 and 16, to read as hereinafter set out. James Wilson, Secretary of Agriculture."

Counsel for complainant in his brief says:

"The regulation itself shows that it was not based on unwholesomeness, but on the question of name."

And he then refers to the preamble above referred to as proof of that fact. It appears from the evidence in the case that regulations (including the preamble) effective April, 1913, are no longer in force, but were superseded by regulations effective November 1, 1914. These latter regulations were adopted and in force when Houston was served with process and at the time the

answer was filed. The *preamble* to the regulations of 1913 is entirely omitted from the regulations of 1914, now in force. This omission, in view of the complainant's contention, seems significant. It is true that certain paragraphs of the regulations of 1913 are retained in the regulations of 1914. They are as follows:

Section 16, paragraph 1: "Sausage shall not contain cereal in excess of two per cent. When cereal is added its presence shall be stated on the label or on the product."

Paragraph 2: "Water or ice shall not be added to sausage, except for the purpose of facilitating grinding, chopping, or mixing, in which case the added water or ice shall not exceed three per cent., except as provided in the following paragraph."

Paragraph 3: "Sausages of the class which are smoked or cooked, such as Frankfurt style, or Vienna style, and Bologna style, may contain added water in excess of three per cent., but not in excess of an amount sufficient to make the product palatable. When water (in excess of three per cent.) and cereal are added to this class of sausages, the statement 'sausage, water and cereal' shall appear on the label or on the product, but when no cereal is added the addition of water need not be stated."

If the Secretary had said in so many words that sausage containing more than 2 per cent. of cereal and 3 per cent. of water was unwholesome and not fit for food, and for that reason could not be shipped in interstate commerce, would there be any doubt that his action was well within the power conferred upon him by Congress? Not having in explicit terms so declared, what is the fair and reasonable deduction to be made from the regulations and all attendant facts? Why did he limit the amount of cereal and water to be used in the sausage? It cannot be fairly said, I think, that he had in mind only a "false or deceptive name." If this were true, there would have been no need of omitting the "preamble" to the regulations of 1913.

The evidence in this case shows very clearly that the product called "sausage" which contains more than 2 per cent. of cereal and more than 3 per cent. of water is a much inferior and a much cheaper product. This is sought to be excused or explained on the grounds: First, that without the addition of cereal in excess of 2 per cent. and water in excess of 3 per cent. the complainant and those engaged in like business, to wit, Armour, Swift, and others, would not be able to compete with those engaged alone in *intrastate* business. Second. That it is really a philanthropic product, in that the poor and the laboring man and the laboring woman could obtain such food cheaper, and thereby be able to hold body and soul together.

I am free to confess that such contentions have very little weight with me. Centuries ago our Master said:

"What man is there of you, who, if his son ask him for bread will he give him a stone? Or if he ask for a fish will be give him a serpent?"

Here in this case one asks for meat, and he is given a larger quantity of meal and water. This may not have much, if anything, to do with the ultimate question to be decided in the case; but for some reason or other witnesses were questioned by counsel in reference to these matters and their testimony is in the record.

[1] It is insisted that the Court of Appeals settled every possible controversy that has arisen or can arise in this case. If that were true, it would be the plain duty of the court to accept such settlement and enter a judgment in accordance therewith. As I understand the decision of the Court of Appeals, it decided one question, and that question is:

"Could he [the Secretary] prohibit the making of a compound which was sound, healthful, wholesome, and free from dyes, chemicals, preservatives, or ingredients which render such product unfit for human food, by a mere regulation?"

The Court of Appeals said that he could not. If the product is not healthful and wholesome, who is to be the judge? Is it the court or the Secretary? If the discretion has been lodged in the Secretary to determine such questions, and he has exercised such discretion, the court has no power to compel him to change his judgment. Taking into consideration the regulations made

in 1914, together with all the facts and circumstances in evidence, I am satisfied that the Secretary, in the exercise of the discretion given him by law, has determined not only that the product mentioned was being sold under a false and deceptive name, but that it was not a healthful or a wholesome food.

[2] However this may be, the question as to whether the product containing more than 2 per cent. of cereal and more than 3 per cent. of water is in fact a wholesome food product must be determined under the bill and answer by the court from all of the evidence in the case. Upon this question the issue between the complainant and defendant is sharply drawn. It is a simple question of fact. The complainant affirms and the defendant denies. It was practically conceded upon the hearing that sausage could be and was made without the use of cereal in many instances, especially in shipments to points in the state of Pennsylvania, where by the laws of that state cereal was prohibited from use in a sausage product.

The evidence in this case showed or tended to show that sausages made without cereal and water had superior keeping qualities to sausages made with cereal and water. The use of cereal reduces the price of the product and disguises the addition of water. The evidence in this case satisfies the court that the addition of water on account of cereal accelerates fermentation, and consequently tends to make the product unwholesome. It is insisted, however, that the sausage reaches the stomach of the consumer within 12 hours after it is made, and before it has time to ferment, sour, or decompose, That is a race in which the chances seem to be against the consumer.

I am asked to find that the addition of from 5 to 10 per cent. of cereal and from 10 to 20 per cent. of water does *not* render "sausage" unwholesome or unfit for food. Conceding that the meat, cereal, and water used in making a product called sausage are in themselves sound and wholesome constituents, yet when they are put together in quantities ranging from 70 to 80 per cent. of meat, 5 to 10 per cent. of cereal, and 10 to 20 per cent. of water, is the product wholesome and fit for human food? I cannot bring myself to believe that such a product, under all of the evidence in the case, is a *wholesome* food. I must therefore find the issue, made by the pleadings in that regard, in favor of the defendants.

To sum up the conclusions reached by the court, they are as follows:

1. The regulations promulgated by the Secretary in *1914* were within his province and power to make, in determining the question as to whether the product of more than 2 per cent. of cereal and 3 per cent. of water rendered such product unwholesome and unfit for human food.

2. The evidence in the case, without regard to the regulations, satisfies the court that upon the issue joined the finding must be for the defendants.

It is so ordered. The bill is dismissed.