JOHN POTTER, PROSECUTOR, v. THE BOARD OF PUBLIC
UTILITY COMMISSIONERS, THE CENTRAL RAILROAD
COMPANY OF NEW JERSEY, AND THE TOWNSHIP OF
CRANFORD, UNION COUNTY, NEW JERSEY.

Argued December 24, 1915—Decided June 23, 1916.

1. Property merely desirable for park development around the rail-
   road station cannot be ordered taken by the board of public utility
   commissioners under the act of 1913. *Pamph. L., p.* 91.
2. The order of the board of public utility commissioners, in such
   a case, cannot be sustained under the acts of the legislature.
   *Pamph. L.* 1914, *p.* 490, or the act of 1911. *Pamph. L., p.* 379,
   § 17*b*.
3. The Supreme Court, on *certiorari,* has power to review the testi-
   mony to ascertain whether or not the order is supported to any
   extent by the facts submitted to the board for consideration.

On *certiorari* to review an order of the board of public
utility commissioners, altering a certain grade crossing under
*Pamph. L.* 1913, *p.* 91, known as the Fielder Grade Crossing
act.

Before Justices GARRISON, TRENCHARD and BLACK.

For the prosecutor, *Robert Carey.*

For the Central Railroad Company of New Jersey, *George
Holmes.*

For the township of Cranford, *Berkeley C. Austin.*

For the board of public utility commissioners, *Frank H.
Sommer.*

The opinion of the court was delivered by

BLACK, J. In this case there are forty reasons presented
to the court for setting aside the order made by the board
of public utility commissioners. The order is dated the

16th day of April, 1915. All the points involved in these reasons, however, have been disposed of in the opinion filed this term, in the case in which the Erie Railroad Company is prosecutor and the city of Paterson is defendant, except those points which will now be brought under discussion. In general terms they are, that in so far as the order directs the taking of the prosecutor's property, it is in excess of the jurisdiction of the board of public utility commissioners, and also, the findings of the board are not supported by the evidence. On both of these grounds the order of the public utility commissioners in this case will have to be set aside. The board in its report found that a proposed walk, "known as North avenue, the walk extending westward through the small triangular block known as the Potter building, returning into the westerly sidewalk of Eastman street. In the development of this plan, the Potter building is therefore proposed to be taken for the triple purpose of making an adequate approach to the station, a new highway from the west, and to open the end of Eastman street in a proper manner. * * * The taking * * * of the Potter property on the north side of the tracks bounded by Eastman street, North avenue and Union avenue, are necessary for the full, proper and adequate development of the problem of providing a proper accommodation for traffic to and from the north and south sides of the railroad. * * * In its judgment, however, a proper and adequate development and treatment of the problem before it makes necessary the adoption of the plan as a whole and the taking of the property requisite to its execution."

The facts, as shown by the record, illustrating the situation, upon which the board of public utility commissioners were called upon to act, in brief, are these: a petition had been filed by the township committee of the township of Cranford, Union county, under the act of 1913 (*Pamph. L., p.* 91), known as the Fielder Grade Crossing act, petitioning the board to alter the grade crossing of Union avenue with the Central Railroad Company of New Jersey, at Cranford; at that point, Union avenue and the Central Railroad Company of New

Jersey cross at the same level. The angle of crossing is about forty-five degrees. Walnut avenue on the south and Eastman street on the north side of the crossing of Union avenue terminate at the crossing. Stations of the railroad company are located on each side of the tracks. They are connected by an underground passageway, located wholly on the lands of the railroad company. Six main tracks and a siding cross Union avenue at that point. Schedule A shows in detail the plan of alteration. The only material part which is necessary for this discussion is that part which shows the new underground passageway between the two stations. The opening on the north side is directly opposite the apex of the triangular building of the prosecutor, at the junction of Eastman street and North avenue. The opening at the south end of the new proposed underground passageway comes out on a new highway on the south of the railroad tracks, which connects Union avenue with Walnut avenue.

Mr. Mosher, the township engineer, testified the building on the triangular plot of land in the angle between Eastman street and Union avenue is approximately twenty (20) feet from the right of way line of the railroad company. It does not abut on the railroad property at any point. He does not pretend to say in any portion of his testimony that the taking of the Potter property is necessary to the alteration of the grade crossing. Neither does Mr. Owen, the engineer for the Central Railroad Company, the only other engineer testifying. The best that can be said of this testimony is that the Potter property is desirable for park development in connection with the new subway. It is desired so that it may be used as an approach to the proposed new foot subway.

From Mr. Owen's testimony these questions and answers are taken:

"*Q.* So that in your judgment as an engineer, it was entirely feasible and practicable to eliminate that crossing if necessary, without interfering in any way, shape or manner with the Potter property?

"*A*. It is practicable, yes.

"*Q*. In your judgment, then, the destruction of the Potter property and the taking of it as a part of this improvement is simply in the interest of the park development around the station?

"*A*. It is in the general interest of the improvement, both from the railroad standpoint and the municipal standpoint.

"*Q*. But has no distinct relation to the abolition of the crossing?

"*A*. Not necessarily, no."

We think the findings of the board are not supported by the testimony on this branch of the case. This court has the power to review the testimony, to ascertain whether or not the order is supported to any extent by the facts submitted to the board for its consideration. *Erie Railroad Co. v. Board of Public Utility Commissioners, ante p.* 24; *West Jersey, &c., Railroad Co. v. Board of Public Utility Commissioners,* 87 *N. J. L.* 170; 94 *Atl. Rep.* 60; *Public Service Gas Co. v. Board of Public Utility Commissioners,* 84 *N. J. L.* 463; 88 *Id.* 603; 95 *Atl. Rep.* 127; *Erie Railroad Co. v. Board of Public Utility Commissioners,* 87 *N. J. L.* 438; 95 *Atl. Rep.* 177. Nor can we find anything in the act of the legislature which gives the board of public utility commissioners jurisdiction to order private property taken when, as in this case, such property is not fairly incidental nor necessary to the elimination of the danger or impediment at the crossing involved in the petition and order. That such property may be desirable for the purpose of park development around the railroad station is not sufficient to give the board jurisdiction, under this statute, for ordering private property to be taken.

It is urged, however, the order may be sustained under the act of 1914 (*Pamph. L., p.* 490), which confers upon the railroad company power to take by condemnation any land and property required for the purpose of complying with any order made by the board of public utility commissioners, upon ascertainment and payment or tender of compensation, as provided by law. Or under the act of 1911 (*Pamph. L., p.*

379, § 17*b*), which confers upon the board of public utility commissioners power after hearing, upon notice, to require every public utility to furnish safe, adequate and proper service and to keep and maintain its property and equipment in such condition as to enable it to do so. It requires no argument to show that the order of the board cannot be sustained under either of these statutes. They cannot be made to apply to this proceeding by any accepted canons of statutory interpretation.

For these reasons, the order made by the board in this case will be set aside, with costs.