## *In re* CUMBERLAND POWER CO.

### (*Nashville.* December Term, 1922.)

1. **CONSTITUTIONAL LAW.** Legislature can neither add to nor take away from constitutional grant of power to courts.

Constitution, article 6, section 1, providing that the judicial power of the State shall be vested in one supreme court and in such circuit, chancery, and other inferior courts as the legislature shall from time to time ordain and establish, vests all power, and the legislature can neither add to nor take away from such grant of power. (*Post, pp.* 506-515.)

Acts cited and construed: Acts 1921, ch. 107.

Cases cited and approved: Hayburn's Case, 2 Dall., 411; Memphis v. Halsey, 59 Tenn., 210; State v. Gannaway, 84 Tenn., 124; Ward v. Thomas, 42 Tenn., 565; State v. Hall, 65 Tenn., 7; Lawyers' Tax Cases, 55 Tenn., 650; State v. McCann, 72 Tenn., 1; Mayor and Aldermen of Knoxville v. Lewis, 80 Tenn., 180; Acklen v. Thompson, 122 Tenn., 43; Woods v. State, 130 Tenn., 100; Selective Draft Law Cases, 245 U. S., 366; Monongahela Bridge v. U. S., 216 U. S., 177; Union Bridge Co. v. U. S., 204 U. S., 364; Miller v. Mayor of New York, 109 U. S., 385; St. Louis Indep., Packing Co. v. Houston, 231 Fed., 779; Sears Roebuck Co. v. Federal Trade Comm., 258 Fed., 307; Western Union Tel. Co. v. Myatt, 98 Fed., 335; Sabre v. Rutland R. R. Co., 86 Vt., 347; Erie R. Co. v. Board of Pub, Utility Comm're, 87 N. J. Law, 438; Stettler v. O'Hara, 69 Or., 519; State v. Johnson, 61 Kan., 803: People v. Boggs, 56 Cal., 648; Prentis v. Atlantic Coast Line, 211 U. S., 210; In re McLean, 37 Fed., 648; U. S. v. Lalone, 44 Fed., 475; Vance v. Burbank, 101 U. S., 514; West v. Hitchcock, 205 U. S., 80; Fong Yue Ting v. U. S., 149 U. S., 698; U. S. v. Ju Toy, 198 U. S., 253; Smyth v. Ames, 169 U. S., 466; C., N. O. & T. P. R. R. v. I. C. C., 162 U. S., 184; I. C. C. v. Brimson, 154 U. S., 447; I. C. C., v. C., N. O. & T. P. R. R. Co., 167 U. S., 479; L. & N. R. v. Garrett, 231 U. S., 298.

In re Cumberland Power Co.

Cases cited and distinguished: Miller v. Conlee, 37 Tenn., 432; Marbury v. Madison, 1 Cranch, 137; Muskrat v. U. S., 219 U. S., 348; L. & N. R. Co. v. Garrett, 231 U. S., 298; W. U. Tel. Co. v. Myatt, 98 Fed., 341.

2.  **CONSTITUTIONAL LAW.** Railroad and Public Utilities Commission not a "court," within constitutional provisions.

The Railroad and Public Utilities Commission created and given power by Acts 1897, chapter 10, Public Acts 1919, chapter 49, and Public Acts 1921, chapter 107, having primarily legislative and executive functions, the power to hear and determine controversies, being merely incidental thereto, is not a court within Constitution article 6, section 1, vesting judicial power, a court being a medium for the exercise of the judicial power of the State, and connoting the ordinary attributes of judicial tribunals, a judges and the machinery necessary for the judicial administration of justice. (*Post, p.* 515.)

Cases cited and approved: W. U. Tel. Co. v. Myatt, 98 Fed., 335; State ex rel., Godard v. Johnson, 61 Kan., 803; McNeill v. Southern Ry. Co., 202 U. S., 543.

3.  **COURTS.** Statutory provision for appeal from Railroad and Public Utilities Commission to supreme court held invalid.

Since the Railroad and Public Utilities Commission is not a court, Public Acts 1921, chapter 107, section 7, providing for an appeal to the Supreme Court from the final finding, order, or judgment of the Commission is unconstitutional and invalid, and therefore no appeal lies from such Commission to the supreme court, which under Constitution article 6, section 2, has appellate jurisdiction only. (*Post, pp.* 515, **516**.)

Acts cited and construed: Acts 1921, ch. 107, sec. 7.

Case cited and distinguished: Rex v. Mayor of Oxford, Palmer, 453.

FROM WILSON.

Appeal from Railroad Commission.

THOS. G. KITTRELL, THOS. B. FINLEY and CHAS. C. TRABUE, for Cumberland Power Co.

SETH M. WALKER, for City of Lebanon.

MR. H. G. MORRISON, Special Justice, delivered the opinion of the Court.

This is an appeal by the Cumberland Power Company from a decision of the railroad and public Utilities Commission, disapproving of a certain franchise contract submitted to it under provisions of chapter 107 of Act 1921, entered into by it with the city of Lebanon. The power company contends that the franchise contract should be approved.

In the argument of the case, counsel for the city of Lebanon made the point that this court has no power to hear and determine this matter, because, in legal effect, it is an original proceeding which has not been passed upon by an inferior court, and under the Constitution the jurisdiction of this court is appellate only.

Therefore, the first question is whether or not the said decision of the Railroad and Public Utilities Commission is one which may be reviewed by this court.

The Constitution of Tennessee provides that the judicial power of the State shall be vested in one supreme court, and in such circuit, chancery, and other inferior courts as the legislature shall from time to time ordain and establish. Article 6, section 1. This article vests all judicial power, and it is not necessary to cite authority for

the proposition that the legislature can neither add to nor take away from this grant of power. Hayburn's Case, 2 Dall., 411, 1 L. Ed., 436.

Section 2 of article 6 provides that the jurisdiction of the supreme court shall be appellate only.

In a case decided by this court in 1858, involving the Constitution of 1834, which carried a clause identical with the above, Judge CARUTHERS, for the court, said:

"It was intended, in all controversies between parties, that they should have the advantage of two tribunals: First, the court established by the legislature, and then by appeal, the court of last resort estáblished by the Constitution." *Miller* v. *Conlee,* 5 Sneed, 432.

This construction has been adhered to by this court. *Memphis* v. *Halsey,* 12 Heisk., 210; *State* v. *Gannaway,* 16 Lea, 124; *Ward* v. *Thomas,* 2 Cold., 565; *State* v. *Hall,* 6 Baxt., 7.

Chief Justice MARSHALL in *Marbury* v. *Madison,* 1 Cranch, 137, 2 L. Ed., 60, said:

"If it had been intended to leave it in the discretion of the legislature to apportion the judicial power between the supreme and inferior courts according to the will of that body, it would certainly have been useless to have proceeded further than to have defined the judicial power, and the tribunals in which it should be vested. The subsequent part of the section is mere surplusage, is entirely without meaning, if such is to be the construction. If Congress remains at liberty to give this court appellate jurisdiction, where the Constitution has declared their jurisdiction shall be original, and original jurisdiction where the Constitution has declared it shall be appellate,

the distribution of jurisdiction, made in the Constitution, is form without substance."

In *Muskrat* v. *United States,* 219 U. S., 348, 31 Sup. Ct. 250, 55 L. Ed., 246, the court said:

"That neither the legislative nor the executive branches can constitutionally assign to the judicial any duties but such as are properly judicial, and to be performed in a judicial manner."

Is the Railroad and Public Utilities Commission a court within the meaning of the Constitution and the language of our courts construing it? A court has been defined to be "a place where justice is judicially administered." Coke on Littleton, 58; 3 Blackstone's Commentary, 23.

"To adjudicate upon and protect the rights and interests of individual citizens, and to that end to construe and apply the laws, is the peculiar province of the judicial department." Cooley, Const. Lim., 132.

See, also, Bouvier's Law Dictionary, quoted with approval in Lawyers' Tax Cases, 8 Heisk., at page 650.

The Constitution vests the judicial power in—"one supreme court and in such circuit, chancery and other inferior courts as the legislature shall . . . establish; in the judges thereof, and in justices of the peace."

It is apparent that the word "court," as used in our Constitution, means the medium for the exercise of the judicial power of the State, and connotes the ordinary attributes of judicial tribunals, certainly a judge or judges and the machinery necessary for the judicial administration of justice. Based upon the foregoing conceptions of the judicial power and the courts, did the legislature, by the act or acts creating the Railroad and Public Utilities

Commission, intend to create a subordinate court and to vest in it judicial power within the meaning of our Constitution?

The acts in question are parts of the same general body of legislation affecting public service corporations enacted in 1897 (chapter 10), 1919 (chapter 49), and 1921 (chapter 107). The caption of the act of 1897 is to create a Railroad Commission and to define its powers. The caption of the act of 1919 merely amends the act of 1897 and changes the name of the commission from Railroad Commission to Railroad and Public Utilities Commission. The last act, that of 1921, amends the preceding acts, enlarges the powers, and provides for an appeal to this court. Certainly no one of the captions of the three acts, even by inference, conveys the idea that a court is being created, and, if the body of the acts did create a court by apt and proper language, they would be unconstitutional under numerous decisions in this State, as embracing more than one subject. *State* v. *McCann*, 4 Lea, 1; *Mayor and Aldermen of Knoxville* v. *Lewis*, 12 Lea, 180; *Acklen* v. *Thompson*, 122 Tenn. (14 Cates), 43, 126 S. W., 730, 135 Am. St. Rep., 851.

The three acts above referred to contain sixty-two sections. It would becloud the question to enter into a minute and detailed discussion of these sections. We have read each one carefully, and it is sufficient to say that they vest in the Railroad and Public Utilities Commission the following power:

(a) To make rules for the future, which is legislative in its nature. This delegated legislative power is characteristic of administrative tribunals. While courts have the

power to make rules, these are limited to rules for their own procedure 'and are not rules for the government of human conduct. The rule-making function is legislative in its nature, distinct from the *quasi*-judicial function, in that such rules are made for future conduct, whereas the settlement of controversies affects only the legality of past acts. Familiar examples of the rule-making functions are the making of regulations by railroad commissions to be observed by public utilities and public service corporations, safety laws, rules prescribed by workmen's compensation boards, rules and regulations by boards of health. Cases involving typical illustrations and problems are: *Woods* v. *State,* 130 Tenn., 100, 169 S. W., 558, L. R. A., 1915F, 531; *Selective Draft Law Cases,* 245 U. S., 366 (1918), 38 Sup. Ct., 159, 62 L. Ed., 349, L. R. A., 1918C, 361, Ann. Cas., 1918B, 856; *Monongahela Bridge* v. *U. S.* (1910), 216 U. S., 177 30 Sup. Ct., 356, 54 L. Ed., 435; *Union Bridge Co.* v. *U. S.,* 204 U. S., 364 (1907), 27 Sup. Ct., 367, 51 L. Ed., 523; *Miller* v. *Mayor of New York,* 109 U. S., 385 (1883), 3 Sup. Ct., 228, 27 L. Ed., 971; *St. Louis Indep. Packing Co.* v. *Houston* (D. C.), 231 Fed., 779 (E. D. Mo., 1916) ; *Sears Roebuck Co.* v. *Federal Trade Comm.,* 258 Fed., 307 (7th Circ., 1919), 169 C. C. A., 323, 6 A. L. R., 558; *Western Union Tel. Co.* v. *Myatt* (C. C.), 98 Fed., 335 (Circ. Ct. D. Kan., 1899) ; *Sabre* v. *Rutland R. R. Co.,* 86 Vt., 347, 85 Atl., 693 (1913), Ann. Cas., 1915C, 1269; *Erie R. Co.* v. *Board of Pub. Utility Comm'rs,* 87 N. J. Law. 438, 95 Atl., 177 (1915) ; *Stettler* v. *O'Hara,* 69 Or., 519, 139 Pac., 743 (1914), L. R. A., 1917C, 944, Ann. Cas., 1916A, 217; *State* v. *Johnson,* 61 Kan., 803, 60 Pac., 1068 (1900), 49 L. R. A., 662; *People* v. *Boggs,* 56 Cal., 648 (1880).

(b) The application of these rules in particular cases, which is executive or administrative.

(c) The decision of controversies arising under them, which is judicial in nature or *quasi*-judicial. It has been frequently held that the exercise of a *quasi-judicial* function does not prevent it from being administrative in character.

The case of *L. & N. R. Co.* v. *Garrett*, 231 U. S., 298, 34 Sup. Ct., 48, 58 L. Ed., 229, involved the validity of statutes under which the Kentucky Railroad Commission functioned. Mr. Justice HUGHES, speaking for the court, said:

"The contention is that, before the Commission makes such an order, it is required to exercise judicial functions. It is first to determine whether the carrier has been exacting more than is just and reasonable; it is to give notice and a hearing; it is to 'hear such statements, arguments or evidence offered by the parties' as it may deem relevant; and it is in case it determines that the carrier is 'guilty of extortion' that it is to prescribe the just and reasonable rate. Still, the hearing and determination, viewed as prerequisite to the fixing of rates, are merely preliminary to the legislative act. To this act, the entire proceeding led; and it was this consequence which gave to the proceeding its distinctive character. Very properly, and it might be said, necessarily—even without the express command of the statute—would the Commission ascertain whether the former, or existing, rate, was unreasonable before it fixed a different rate. And in such an inquiry, for the purpose of prescribing a rule for the future, there would be no invasion of the province of the judicial department. Even where it is essential to maintain strictly the distinction

between the judicial and other branches of the government, it must still be recognized that the ascertainment of facts, or the reaching of conclusions upon evidence taken in the course of a hearing of parties interested, may be entirely proper in the exercise of executive or legislative, as distinguished from judicial, powers. The legislature, had it seen fit, might have conducted similar inquiries through committees of its members, or specially constituted bodies, upon whose report as to the reasonableness of existing rates it would decide whether or not they were extortionate and whether other rates should be established, and it might have used methods like those of judicial tribunals in the endeavor to elicit the facts. It is 'the nature of the final act' that determines 'the nature of the previous inquiry.' *Prentis* v. *Atlantic Coast Line*, 211 U. S., 210, 227, 53 L. Ed., 150, 159, 29 Sup. Ct., Rep., 67."

The determination of pension claims decisions of the land department, adjudicating the rights to public lands, decisions of draft boards upon the eligibility for military service, and decisions of the emigration officials upon deportation of aliens, all involve the power to hear and determine, but have been held properly placed in the executive or administrative department. *In re McLean* (D. C.), 37 Fed., 648; *U. S.* v. *Lalone* (C. C.), 44 Fed., 475; *Vance* v. *Burbank,* 101 U. S., 514, 25 L. Ed., 929; *West* v. *Hitchcock,* 205 U. S., 80, 27 Sup. Ct., 423, 51 L. Ed. 718; *Fong Yue Ting* v. *U. S.,* 149 U. S., 698, 13 Sup. Ct., 1016, 37 L. Ed., 905; *U. S.* v. *Ju Toy,* 198 U. S., 253, 25 Sup. Ct., 644, 49 L. Ed., 1040; *Selective Draft Law Cases,* 245 U. S., 366, 38 Sup. Ct., 159, 62 L. Ed., 349, L. R. A., 1918C, 361, Ann. Cas. 1918B, 856.

(d) The right to initiate investigations and to regulate utilities. Our grand jury and coroner's inquest are about the only bodies attached to the judicial department which retain this right of independent inquiry. This power of initiative is mainly regulatory in character.

All of the above powers are to be exercised with respect of public service corporations devoted wholly or in part in the service and patronage of the public. The right of governmental control of property and employments devoted to the public use, commonly called public service corporations, although not absolute and subject to certain limitations, is firmly established. *Smith* v. *Ames,* 169 U. S., 466, 18 Sup. Ct., 418, 42 L. Ed., 819.

In the case of *Prentis* v. *Atlantic Coast Line Co.,* 211 U. S., 210, 29 Supt. Ct., 67, 53 L. Ed., 150, it was held that the Virginia Corporation Commission was not a court.

In *Western Union Telegraph Co.* v. *Myatt* (C. C.), 98 Fed., 341, the court said:

"The exercise by the State of the power to regulate the conduct of a business affected with a public interest, and to fix and determine, as a rule for future observance, the rates and charges for services rendered, is wholly a legislative or administrative function. The legislature may, in the first instance, prescribe such regulations, and fix definitely the tariff of rates and charges; or it may lawfully delegate the exercise of such powers, and frequently does, in matters of detail, to some administrative board or body of its own creation. The establishment of warehouse commissions, boards of railroad commissioners, and the powers usually committed to them, are familiar instances of the delegation of such powers. But by whatever

name such boards or bodies may be called, or by what authority they may be established or created, or however they may proceed in the performance of their duties, they are, in respect of the exercise of the powers mentioned, engaged in the exercise of legislative or administrative functions as important in their character as any that are committed to the legislative branch of the government on the subject of property and property rights. In prescribing regulations or rules of action under the police power of the State for the safety and convenience of the public, or in determining a schedule of rates and charges for services to be rendered, they are in no sense performing judicial functions, nor are they in any respect judicial tribunals. The distinction between legislative and judicial functions is a vital one, and it is not subject to alteration or change, either by legislative act or by judical decree, for such distinction inheres in the Constitution itself, and is as much a part of it as though it were definitely defined therein. When the legislature has once acted, either by itself or through some supplemental and subordinate board or body, and has prescribed a tariff of rates and charges, then whether its action is violative of some constitutional safeguard or limitation is a judicial question, the determination of which involves the exercise of judicial functions. The question is then beyond the province of legislative jurisdiction."

The foregoing powers conferred upon the Railroad and Public Utilities Commission are characteristic of all administrative bodies. The Interstate Commerce Commission, which is vested with broader powers than those conferred by the acts in question, has been held to be an ad-

ministrative body, although it exercises vastly larger powers of decision. *C. N. O. & T. P. R. R.* v. *I. C. C.*, 162 U. S., 184, 16 Sup. Ct., 700, 40 L. Ed., 935; *I. C. C.* v. *Brimson,* 154 U. S., 447, 155 U. S. 3, 14 Sup. Ct., 1125, 15 Sup. Ct., 19, 38 L. Ed., 1047, 39 L. Ed., 49; *I. C. C.* v. *C., N. O. & T. P. R. R. Co.,* 167 U. S., 479, 17 Sup. Ct., 896, 42 L. Ed., 243; *L. & N. R.* v. *Garrett,* 231 U. S., 298, 34 Sup. Ct., 48, 58 L. Ed., 229.

From the foregoing it is apparent that the broad general purpose of the acts in question is to confer upon the Railroad and Public Utilities Commission powers and functions which are primarily legislative and executive, and that the power to hear and determine controversies, the *quasi*-judicial power, is merely incidental thereto. The proposition that the legislature intended or attempted to create a court by the acts above referred to and to vest it with the power to make rules, interpret and execute them, cannot be successfully maintained. The Railroad and Public Utilities Commission is authorized to initiate and prosecute its own proceedings before itself; and such proceedings are to be heard, decided, and its determination therein is authorized to be enforced by itself. A tribunal exercising such commingled legislative, executive, and judicial functions, from its very nature cannot be made a court. *W. U. Tel. Co.* v. *Myatt* (C. C.), 98 Fed., 335; *State ex rel. Godard* v. *Johnson,* 61 Kan., 803, 60 Pac., 1068, 49 L. R. A., 662; *McNeill* v. *Southern Ry. Co.,* 202 U. S., 543, 26 Sup. Ct., 722, 50 L. Ed., 1142.

It follows that section 7 of chapter 107 of the Acts of 1921, providing for an appeal to this court from the final finding, order, or judgment of said commission is uncon-

stitutional and invalid. This section may be eliminated without destroying the remaining sections of the act.

Section 7 being eliminated, there is no specific provision in chapter 107 of the Acts of 1921 for a judicial review of the decisions of the Commission. It is fundamental that every man have his "day in court," and we have no doubt that an appropriate procedure exists, for, as quaintly observed by an ancient English judge, in the case of *Rex* v. *Mayor of Oxford,* Palmer, 453:

"The laws of God and man both give the party an opportunity to make his defense, if he has any. I remember to have heard it observed by a very learned man upon such an occasion that even God himself did not pass sentence upon Adam, before he was called upon to make his defense. 'Adam,' says God, 'where art thou? . . . Hast thou not eaten of the tree whereof I commanded thee that thou shouldest not eat?" And the same question was put to Eve also."

It is not necessary to discuss the other questions presented in the record. The proceeding will be dismissed.