IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

MIDDLE DIVISION

NASHVILLE, DECEMBER TERM, 1919.

CITY OF MEMPHIS *v.* B. A. ENLOE, *et al.*

(*Nashville,* December Term, 1919.)

1. **STATUTES. Validity. Title. Railroad commission. Amending acts.**
Acts 1919, chapter 49, which amended Acts 1897, chapter 10, entitled
an act to create a Railroad Commission, defining its powers and
duties to prohibit extortion, etc., is not invalid under Constitution,
article 2, section 17, which forbids any bill to become a law which
embraces more than one subject and declares that all acts which
repeal, revive, or amend former laws shall recite in their caption
the substance of the law repealed or revived on the theory that
the original act related solely to railroads and the amending act
was extended so as to embrace other public utilities, as street
railroads. (*Post. pp.* 621-624.)

Acts cited and construed: Acts 1919, ch. 49; Acts 1897, ch. 10.
Cases cited and approved: Bank v. Divine Gro. Co., 97 Tenn., 603;
Railroad v. Byrne, 119 Tenn., 278; State v. Algood, 87 Tenn.,
163; Goodbar v. Memphis, 113 Tenn., 20.

Constitution cited and construed: Art. 2, sec. 17.

(618)

City of Memphis v. Enloe.

2. **CONSTITUTIONAL LAW.** Arbitrary classification. Regulation of street railroads.

An act regulating public utilities, as street railroads, is invalid both under the federal and Tennessee constitutions, if it makes an arbitrary and illegal classification. (*Post, p.* 624.)

Cases cited and approved:   State v. Railroad, 124 Tenn., 1;   Stratton v. Morris, 89 Tenn., 534;   Railway v. Ellis, 155. U. S., 155; Connolly v. Union Sewer Pipe Co., 184 U. S., 540.

3. **CONSTITUTIONAL LAW.** Right to attack constitutionality of act.

The city of Memphis cannot attack Acts 1919, chapter 49, regulating public utilities, as street railroads, and giving the Railroad Commission jurisdiction over fares, on the ground that the requirement that the public utilities carry for the protection of stockholders a depreciation account, that they keep their books in a certain manner, and that they cannot issue stocks without first obtaining authority from the commission, etc., amounts to an arbitrary and illegal classification;   the city not being entitled to complain against such classification of public utilities.   (*Post, pp.* 624-626.)

4. **CONSTITUTIONAL LAW.** Illegal classification. Regulation of public utilities.

The provisions of Acts 1919, chapter 49, that public utilities shall carry for protection of stockholders, etc., a depreciation account, that they shall keep books in a certain manner, and that they shall not issue stocks, etc., without consent of the Railroad Commission, do not render the act invalid on the theory that it arbitrarily classifies public utilities and discriminates against them. (*Post, pp.* 624-626.)

Case cited and approved:   Noell v. Power Co., 130 Tenn., 245.

5. **CONSTITUTIONAL LAW.** Validity of statute. Persons entitled to question.

Though Acts 1897, chapter 10, provided that no person owning bonds or stocks of any railroad company should serve as a member of the Railroad Commission, the city of Memphis cannot attack the constitutionality of Acts 1919, chapter 49, extending the regulatory powers of the Railroad Commission to public utilities, as street

railroads, on the ground that the subsequent act made no such provision; for the city is not, in a suit to enjoin the commission from hearing an application for increase in rates, interested in such provision. (*Post, pp.* 626, 627.)

6. **PUBLIC SERVICE COMMISSIONS. Qualification. Ownership of railroad securities.**

The provision of Acts 1897, chapter 10, creating the Railroad Commission, that no person owning stocks or bonds of any railroad or transportation company shall serve as commissioner, must be deemed incorporated in Acts 1919, chapter 49, extending the powers of the commission to public utilities, as street railroads, for the two acts after amendment will be read as one. (*Post pp.* 626, 627.)

7. **CONSTITUTIONAL LAW. Obligation of contracts. Street railroad rates.**

Acts 1919, chapter 49, extending the powers of the Railroad Commission to public utilities and allowing the commission to investigate and fix rates, is not invalid as impairing the obligation of contract in violation of Constitution U. S. and Constitution Tenn. article 1, section 20, as to the city of Memphis, which had previously by ordinance fixed the rate which street railroad company doing business therein might charge. (*Post, pp.* 627-630.)

Cases cited and approved: Denver & So. Platte Ry. Co. v. City of Englewood, 62 Colo., 229; Home Telegraph Co. v. Los Angeles, 211 U. S., 265; Detroit v. Detroit Citizens' St. Ry. Co., 184 U. S., 368; Vicksburg v. Vicksburg Waterworks Co., 206 U. S., 496; Providence Bank v. Billings, 4 Pet., 514; Railroad Commission Cases, 116 U. S., 307; Freeport Water Co. v. Freeport City, 180 U. S., 587; Lynn v. Polk, 76 Tenn., 121.

Case cited and distinguished: Collingswood Sewerage Co. v. Borough of Collingswood, 105 Atl., 209.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.
—Hon. J. B. Newman, Chancellor.

H. J. Livingston, City Attorney, for appellant.

Frank M. Thompson, Attorney-General, and Wright,
Miles, Waring & Walker, for appellees.

Mr. Chief Justice Lansden delivered the opinion of
the Court.

This case was brought to enjoin the Railroad Com-
mission, composed of Messrs. Enloe, Welch, and Han-
nah, from hearing an application filed by the receivers
of the Memphis Street Railway Company, asking au-
thority to increase the fare for passengers on its street
cars in excess of five cents.   The basis of the bill is
that chapter 49, Acts of 1919, is unconstitutional and
void.   The chancellor held the act valid and dismissed
the bill, and complainant appealed to this court.   The
court considered the case one of general importance and
advanced it upon the docket for hearing.   A number of
errors have been assigned, but they present the general
question that the act assailed is void.   We will discuss
the objections made to the act in the order in which
they appear in the briefs, and therefore a fuller
statement of the purposes of the bill is not deemed
important.

The first objection to the act is that it violates sec-
tion 17 of article 2 of the Constitution, which forbids
any "bill to become a law which embraces more than
one subject, that subject to be expressed in the title.

All acts which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed, revived or amended.''

It is said that the act in question is invalid because the act amended, under an appropriate caption, relates solely to steam railroads; and this act, while purporting to amend it, expressly provides that its provisions, and none of the powers conferred upon the Railroad and Public Utilities Commission by the amendatory act, shall relate to such railroads.

We think the fundamental error in this contention lies in the fact that learned counsel considers chapter 10 of the Acts of 1897, as relating alone to the subject of railroads. While it does relate to railroads, the subject expressed in the title is not confined to railroads. It is an act ''to create a Railroad Commission in this State and define its duties and powers, to prohibit extortion, unjust discrimination and undue or unreasonable preference by railroad companies and other persons operating railroads in this State, in their charges for transportation of freight and passengers; to secure just and reasonable rates and charges for all such services; and to impose penalties and to provide civil remedies for and punish violation of, this act, and to secure the due execution and enforcement of its provisions, and all lawful orders, rules and regulations of the said Railroad Commission.'' The amendment made was to ''change the name of the Railroad Commission, to increase its powers and functions, and to embrace within its jurisdiction and powers all other public utilities.'' It will thus be seen that the original act relates alone to steam railroads and their regulation.

while this amendment, in addition to changing the name of the commission, increases its powers and functions so as to embrace within its jurisdiction and powers all other public utilities. It is immaterial that the amenda-tory act excludes steam railroads from the operation of the amendment, because the original act relates to them. It is not a substantial objection, if made, that the two provisions of the act as amended are not homol-ogous. They are all public utilities, and the legislature can deal with them together better than separately. It is true that the title of the amendatory act does not state that steam railroads are to be excepted from the operation of the amendatory act. But this is not mate-rial, because steam railroads are dealt with in the origi-nal act. The amendment proposed is to change the name of the Railroad Commission, and to increase its powers and functions so as to embrace within them all other public utilities. The use of the word "other" might indicate the intention of the legislature to exclude steam railroads. At all events, it indicates that the legislature knew that steam railroads were public utilities dealt with by the act of 1897, and desired to expand the original act so as to increase its powers and functions. We do not think the case of *Bank* v. *Divine Gro. Co.*, 97 Tenn., 603, 37 S. W., 390, cited by com-plainants, is contrary to this holding.

The case of *Railroad* v. *Byrne*, 119 Tenn. 278, 104 S. W., 460, seems to be controlling on this branch of the bill. This amendatory act does recite the caption of the amended act, and we think the provisions of the amenda-tory act are germane to the original act and embraced within the title thereof. *State* v. *Algood*, 87 Tenn., 163,

10 S. W., 310; *Goodbar* v. *Memphis,* 113 Tenn., 20, 81 S. W., 1061. The original act is an act to create a Railroad Commission and define its duties and powers. The amendatory act changes the name of the Railroad Commission and increases its powers and functions. It is well understood, we think, that the generality of the title of a bill is no objection to the bill, provided it conveys a reasonable understanding of the subject of legislation; and it is equally well understood that the body of the act need not fill up the title.

It is also said that the act in question makes arbitrary and illegal classifications, and for these reasons is void. It is well settled that an act is void, both under the laws of Tennessee and of the United States, which makes an arbitrary and illegal classification. *State* v. *Railroad,* 124 Tenn., 1, 135 S. W., 773; *Stratton* v. *Morris,* 89 Tenn., 534, 15 S. W., 87, 12 L. R. A., 70; *Railway* v. *Ellis,* 165 U. S., 155, 17 Sup. Ct., 255, 41 L. Ed., 666; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S., 540, 22 Sup. Ct., 431, 46 L. Ed., 679.

But we are of opinion that the act in question is not open to this assailment. The assault is, specifically, that the requirement in the act that public utilities carry for the protection of stockholders, bondholders, or other securities a depreciation account; that they keep their records, books, and accounts in a certain manner; that they cannot issue stocks, bond certificates, bonds, debentures, or other evidences of indebtedness payable in more than one year without first obtaining authority from the commission; that they cannot lease, merge, or consolidate any of their properties, rights, or franchises without the approval of the commission; that they can-

not acquire any privilege or franchise without the approval of the commission; that such utility has the right to appeal to the commission from any order or regulation made by any local, municipal, and county governing body; the power of the commission to require such utilities to construct and operate, extend or abandon the service—made the act void because introduced by the amendatory act and not contained in the original act. It is said that these requirements of public utilities other than steam railroads create an illegal and arbitrary classification against them. Under authority of *Noell* v. *Power Co.*, 130 Tenn., 245, 169 S. W., 1169, and many other cases, we think the city of Memphis cannot complain at an alleged unlawful classification and discrimination against these utilities. The city of Memphis is not a steam railroad or other public utility, and owns no interest in such a utility, and makes no complaint in its bill against such a utility. Therefore the question is academic in this case. However, we do not desire to be understood as being doubtful of the effect of the provision referred to. It is within the power of the legislature to make the classifications made in this act as between steam railroads and other public utilities. Street railways are not the only public utilities dealt with by the act. The requirements of public utilities above set out may easily be referred to the general public interest, rather than to an arbitrary classification against such utilities. Most steam railroads have their stocks and bonds, etc., quoted on the market exchange, and they have statements of their financial condition prepared for public inspection. Steam railroads must make complete statements of

141 Tenn.—40

their financial condition to the Railroad Commission; and this becomes a public record for the inspection of all interested. It would seem that they have substantially the same burden cast upon them in this respect which the amendatory act casts upon other utilities. The other regulations of street railways can be enforced by the commission because most of them are wholly within the State, and none of them make an interstate tariff. Steam railroads are interstate as well as intrastate, and it is not within the jurisdiction of the commission to enforce its regulations in other States. A railroad is an entirety, and all of its bonds, stocks, or other evidences of indebtedness cover the entire road, and consequently the commission has no jurisdiction to enforce the regulations of the amendatory statute against such an interstate road. We think this distinction is just and reasonable, and not unlawful.

We do not think the city of Memphis can complain that the original act provides that no person owning bonds or stocks of any railroad or transportation company or connected therewith, shall serve as a member of the Railroad Commission, and that each member of the commission shall take an oath stating affirmatively that he is not so interested or connected. The city is not interested in this suit in this provision, if indeed the requirements of the original act would not incorporate these provisions within the amendatory act. The act, after amendment, will be read together and as one act. *Byrne* v. *Railroad,* supra. The qualifications prescribed in the original act for the commissioners will still obtain notwithstanding the amendment. If this provision had been inserted in the amendment it would have been

in the act twice—both in the original and in the amendment.

At the time of the passage of this amendment the city of Memphis had an ordinance forbidding street railway companies from making charges for passenger fare in excess of five cents, etc.  The amendment assailed empowers the Public Utility Commission to hear complaints, or to investigate upon its own motion any matter concerning any public utility, and to fix just and reasonable individual rates, joint rates, tolls, fares, charges, or schedules, whenever the commission shall determine any existing individual rate, joint rate, toll, fare, charge or schedule thereof is unjust or unreasonable, howsoever the same may have heretofore been fixed or established.  The commission is also given power to hear and determine whether any increase in individual rates, joint rates, tolls, fares, charges, or schedules made by any public utility is just and reasonable.  It is said that this provision is violative of the 14th Amendment to the Constitution of the United States, and section 20 of article 1 of the Constitution of Tennessee.  The act complained of is modeled after a similar act of New Jersey, approved April 21, 1911 (P. L., p. 374).  The Court of Errors and Appeals of New Jersey (*Collingswood Sewerage Co.* v. *Borough of Collingswood,* 105 Atl., 209) use this language in reference to their act:

"The Collingswood Sewerage Company was incorporated under chapter 210 of the Laws of 1898. . . . Its right to construct a sewerage system in the borough of Collingswood was conferred by the legislative grant contained in the statute.  The exercise of that right,

however, was suspended by the mandate of the legislature until it obtained from the borough its consent to the construction of such system within its municipal limits. The statute also provided that the municipal authorities should annex to their consent, which should be by a formal ordinance, the maximum prices or rents to be charged to property owners for use of the sewerage system. . . .

"One of the principal grounds of appeal is that the ordinance of the borough and the acceptance by the sewerage company of the provisions thereof constitute an inviolable contract between the parties which the Board of Public Utilities Commissioners has no power to set aside or disregard. We concur in the disposition made of this contention by the Supreme Court, and in the reasoning of Mr. Justice Swayze upon the point. We observe, however, in this opinion, what seems to us to be an inaccurate expression, namely, that 'an ordinance of this kind is a grant upon condition rather than a contract.' The statute of 1898 does not exhibit any purpose on the part of the legislature to clothe the municipalities affected thereby with authority to grant to sewerage companies organized thereunder any franchise, right, power, or privilege whatever. On the contrary, all of the franchises, rights, powers, and privileges vested in these companies, including the right to lay pipes in the public streets, come to them by direct legislative grant. The authority conferred upon the municipalities is the right to suspend the present enjoyment of them by refusing to consent to the user of their streets, except upon conditions which they may name. And even in the withholding of such consent, and in

the imposition of conditions if the consent be accorded, the municipalities are exercising a mere delegated authority, are acting as mere agents of the legislature. It cannot be doubted that, if the right to use the streets of the borough of Collingswood had been granted by the State to the sewerage company without condition or limitation, and the sovereign itself had fixed the maximum charges to be made, it would have power to change the rate whenever in its judgment conditions arose which justified such action. To hold that by delegating the rate-fixing power to its creature it had deprived itself of the right thereafter to modify the rate would be tantamount to declaring that the creature is greater than the creator. It would be strange indeed if the State, which has power to terminate the existence of the municipalities created by it whenever it may see fit, could not revoke authority granted by it to them, and, in the exercise of its sovereignty, cancel conditions which it had permitted them to impose upon other classes of corporations which had also been created by it.''

Other cases in accord are *Denver & So. Platte Ry. Co. v. City of Englewood,* 62 Colo., 229, 161 Pac., 151; *Home Telegraph Co. v. Los Angeles,* 211 U. S., 265, 29 Sup. Ct., 50, 53 L. Ed., 176; *Detroit v. Detroit Citizens' St. Ry. Co.,* 184 U. S., 368, 382, 22 Sup. Ct., 410, 46 L. Ed., 592; *Vicksburg v. Vicksburg Waterworks Co.,* 206 U. S., 496, 508, 27 Sup. Ct., 762, 51 L. Ed., 1155; *Providence Bank v. Billings,* 4 Pet., 514, 561, 7 L. Ed., 939; *Railroad Commission Cases,* 116 U. S., 307, 6 Sup. Ct., 334, 388, 1191, 29 L. Ed., 636.

The power of the city to regulate public utilities is quite generally considered a power of government continuing in its nature, and which cannot be bargained away. One of the cases states conditionally that, if it can be bargained away at all, it can only be by words of positive grant, or something which is in law equivalent. *Freeport Water Co.* v. *Freeport City,* 180 U. S., 587, 21 Sup. Ct., 493, 45 L. Ed., 679.

In this state it has been held that the general governmental powers of the State cannot be bargained away. *Lynn* v. *Polk,* 8 Lea, 121.

The result is that we are of opinion, after an investigation of the act and the authorities, that the act is not violative of any provision of the Constitution of this state, or of the United States. The chancellor so held, and his decree is affirmed.