GEORGE W. McCOLLUM, COMPLAINANT, APPELLANT, *v.* SOUTHERN BELL TELEPHONE & TELEGRAPH CO., DEFENDANT, APPELLEE.

(*Knoxville,* September Term, 1931.)

Opinion filed November 14, 1931.

Fred M. Williams, for complainant, appellant.

Joe V. Williams, for defendant, appellee.

Mr. Justice McKinney delivered the opinion of the Court.

The bill, which was filed in December, 1930, charges that defendant is the exclusive operator of a telephone system in the City of Chattanooga, and that for some years complainant has subscribed for and used one of defendant's telephones, and that the rate charged, and which he has been forced to pay, is unreasonable and unjust. The concluding paragraph of the bill is as follows:

"Complainant avers that the Railroad and Public Utilities Commission of the State of Tennessee, by an order issued on, to-wit, November 7, 1928, effective on or about June 1, 1929, fixed and established the present rates, tolls and charges to be exacted from complainant

and other citizens or telephone users by defendant in Chattanooga, Hamilton County, Tennessee; that said Commission is not a Court; that complainant is entitled to have a judicial review of the decision and order of the Commission."

The prayer of the bill is that the court determine what would be a reasonable and just rate, and that complainant have a decree for all amounts in excess thereof which he has paid to defendant during the six years preceding the filing of the bill.

The bill does not allege that application has been made to the Public Utilities Commission for relief, and it is apparent that no such procedure was followed. The bill was filed upon the theory that the chancery court has original jurisdiction to fix rates.

The chancellor very properly sustained the demurrer to the bill, upon the ground that the matters complained of in the bill are matters committed by statute exclusively to the determination of the Public Utilities Commission in the first instance, and that the courts have no jurisdiction except to correct errors of the Commission. Chapter 49 of the Acts of 1919, which is an amendment to the original Act of 1897 creating a Railroad Commission, expressly confers such jurisdiction upon the Public Utilities Commission. The Act of 1919 is constitutional. *City of Memphis* v. *Enloe*, 141 Tenn., 618. It is modeled after the Federal Interstate Commerce Act of 1887. *New River Lbr. Co.* v. *Tennessee Ry. Co.*, 145 Tenn., 284. The Supreme Court of the United States has in numerous decisions sustained the validity of the federal act. *Fargo* v. *Michigan*, 121 U. S., 230, 30 L. Ed., 888; *Interstate Commerce Commission* v. *Brimson*, 154 U. S., 447, 38 L. Ed., 1047; *New York, etc., R. Co.* v.

*Interstate Commerce Commission,* 200 U. S., 361, 50 L. Ed., 515.

■ The authorities hold without exception that Utility Commissions are administrative bodies and not courts, and that the power conferred upon them to fix rates is legislative and not judicial. *In re Cumberland Power Co.,* 147 Tenn., 504, 515, this Court, after reviewing the authorities, said:

"From the foregoing it is apparent that the broad general purpose of the acts in question is to confer upon the Railroad and Public Utilities Commission powers and functions which are primarily legislative and executive, and that the power to hear and determine controversies, the *quasi*-judicial power, is merely incidental thereto. The proposition that the legislature intended or attempted to create a court by the acts above referred to and to vest it with the power to make rules, interpret and execute them, cannot be successfully maintained."

■ While the Act of 1919 does not expressly state that the fixing of rates by the Public Utilities Commission is exclusive, such, in our opinion, was the legislative intent, and by the great weight of authority the courts do not have jurisdiction over such matters until they have been submitted to and passed upon by the commission. 51 Corpus Juris, 41-42 and note.

In *Texas, etc., R. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S., 426, 51 L. Ed., 553, 9 Ann. Cas., 1079, the court had under consideration the Interstate Commerce Act of 1887, which did not provide that the fixing of rates by the commission was exclusive. The court, in holding that an aggrieved party must apply to the commission for relief before resorting to the courts, said: "For if, without previous action by the commission, power might

be exerted by courts and juries generally to determine the reasonableness of an established rate, it would follow that unless all courts reached an identical conclusion a uniform standard of rates in the future would be impossible, as the standard would fluctuate and vary, dependent upon the divergent conclusions reached as to reasonableness by the various courts called upon to consider the subject as an original question. Indeed, the recognition of such a right is wholly inconsistent with the administrative power conferred upon the commission and with the duty, which the statute casts upon that body, of seeing to it that the statutory requirement as to uniformity and equality of rates is observed. Equally obvious is it that the existence of such a power in the courts, independent of prior action by the commission, would lead to favoritism, to the enforcement of one rate in one jurisdiction and a different one in another, would destroy the prohibitions against preferences and discrimination, and afford, moreover, a ready means by which, through collusive proceedings, the wrongs which the statute was intended to remedy could be successfully inflicted. Indeed, no reason can be perceived for the enactment of the provision endowing the administrative tribunal, which the act created, with power, on due proof, not only to award reparation to a particular shipper, but to command the carrier to desist from violation of the act in the future, thus compelling the alteration of the old or the filing of a new schedule, conformably to the action of the commission, if the power was left in courts to grant relief on complaint of any shipper, upon the theory that the established rate could be disregarded and be treated as unreasonable, without reference to previous action by the commission in the premises. This must

be, because, if the power existed in both courts and the commission to originally hear complaints on this subject, there might be a divergence between the action of the commission and the decision of a court. In other words, the established schedule might be found reasonable by the commission in the first instance and unreasonable by a court acting originally, and thus a conflict would arise which would render the enforcement of the act impossible.''

The language just quoted was approved by this court *In re Lumber & Mfg. Co.,* 141 Tenn., 335. The legal profession has generally so construed the act, and we think there can be no doubt but that the legislature intended to confer upon the commission exclusive jurisdiction, in the first instance, to establish reasonable rates and charges.

This being true, the chancellor was correct in sustaining the demurrer and dismissing the bill, and his decree will be affirmed.