THOMAS J. WILLIAMS, JR., *et al., v.* SOUTHERN BELL TELE-
PHONE & TELEGRAPH CO., *et al.*

(*Nashville,* December Term, 1931.)

Opinion filed April 9, 1932.

314

FRED M. WILLIAMS and GEORGE W. McCOLLUM, for plaintiff in error.

JOE V. WILLIAMS, E. D. SMITH and ROY H. BEELER, Assistant Attorney-General, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The plaintiff in error, Williams, with whom were joined numerous other citizens of Hamilton County, made complaint to the Railroad and Public Utilities Commission that the rates fixed by the Commission for telephone service of the Southern Bell Telephone & Telegraph Company throughout the State, and particularly in Hamilton County, were excessively and unreasonably high, affording an unreasonably large return to the telephone company on the capital invested; and asked a hearing to the end that the rates might be fixed at a reasonable and proper level.

The complaint was dismissed by the Commission, and thereafter the plaintiff in error filed his petition in the Circuit Court of Davidson County, the prayer of which petition is, in full, as follows:

"Your petitioners pray for the writ of *certiorari* to bring the case into this Court, being one of the Circuit Courts of Davidson County, to be retried, or otherwise dealt with as this Court shall order.

"This is the first application which your petitioner has made for writ of *certiorari*.

"Petitioners would have appealed from the action of the Commission but there is no statute or authority in Tennessee authorizing such appeal."

The writ of *certiorari* was issued from the Circuit Court to the Commission, and the record called for was duly certified. Thereafter, the Southern Bell Telephone & Telegraph Company, made, defendant to the petition, filed its plea in abatement to the jurisdiction of the court over the subject-matter of the petition. Holding that the truth of the plea was apparent on the face of the record, the Circuit Court treated the plea as a motion to dismiss, and directed that the petition be dismissed and that the writ of *certiorari* be quashed, "without prejudice to the right of the petitioner to continue, on the merits, to go before the Utilities Commission." From this judgment the petitioner was granted an appeal in the nature of a writ of error to this Court.

It is apparent from the prayer of the petition for the writ of *certiorari,* hereinabove quoted, that the relief sought in the Circuit Court was a trial *de novo* of the complaint filed with the Commission, and a judgment that the telephone service rates now in force are excessively and unreasonably high. Although the petition asked for no specific relief other than that the record be certified by the Commission to the Circuit Court, the writ was sought in order that the case might be "retried," and it was explained that the remedy by *certiorari* was invoked because the statutes do not provide a remedy by appeal. The statutory writ of *certiorari,* "as a substitute for appeal" was, therefore, the remedy invoked by the petitioner. Shannon's Code, sections 4853, 4854 (3); Code of 1932, sections 8989, 8990.

The complaint filed with the Railroad and Public Utilities Commission was an elaborate petition in which the reasonableness of the telephone rates in force was attacked, as yielding an excessive return on the value of the investment, and specifically charging that contracts with the American Telephone & Telegraph Company and the Western Electric Company burdened the Southern Bell Company with unreasonable items of expense, in excess of proper amounts, which had the effect of concealing and covering up the actual net income of the Southern Bell Company; this result being made possible by the fact that the American Telephone & Telegraph Company is the owner of the capital stock of the Southern Bell Company and the Western Electric Company, the arrangement improperly augmenting the profits of the other two corporations at the expense of the Southern Bell Company and the patrons served by it.

The complaint was filed with the Commission September 8, 1931, and was dismissed December 29, 1931. Between those dates the complainants or petitioners, through their counsel, pressed upon the commission their motions (1) for an order treating the complaint as confessed by the American Telephone & Telegraph Company, no answer to the complaint having been made by that company; and (2) for an order permitting them to examine all the books and records of the Southern Bell Company pertaining to its business transacted in Tennessee.

On December 12, 1930, the Commission made an order reciting the opinion of the Commission that the complaint "should be set for hearing, so that the matter may be determined as expeditiously as possible." Following that recitation the order proceeded:

"IT IS THEREFORE ORDERED BY THE COMMISSION:

"That this case be and the same is hereby set for hearing in the hearing room of the Commission, Memorial Building, Nashville, Tennessee, at ten o'clock A. M., on Monday, December 29, 1930, at which time all preliminary motions by either party will be heard; and after said motions have been disposed of by the Commission, if it is then proper to proceed immediately with the hearing of the case on the merits, such proof as either party to this proceeding may desire to offer may be submitted to the Commission so that the case may finally be determined."

On the day named in the quoted order, counsel argued at length the two motions above referred to, and both were denied by the Commission. It was ruled that the American Telephone & Telegraph Company was not a necessary or proper party to the complaint, since no relief was sought against it; that there was no authority of law for the Commission to order the Southern Bell Company to open all its books and records to the inspection of petitioners' counsel, and no particular records were called for, the production of which could be demanded or required by the issuance of a subpoena *duces tecums*.

When these rulings were made, the Commission called upon the petitioners or complainants to offer their proof to support their complaint. They asked for a postponement, on the ground that they did not expect a final hearing at that time and were prepared only to present the two preliminary motions. The Commission ruled that the application for postponement should be supported by affidavit, and when counsel declined to prepare or file such affidavit, the complaint was dismissed.

The final order of the Commission recites:

"The Commission then suggested to counsel for petitioners that if they desired to make an application for a continuance of the case to some future date, they should file an affidavit in support of their application for continuance, stating the names of the witnesses they expected to produce on the hearing, what they expected to prove by them, where they resided, and when it was anticipated the witnesses could be present, and also showing diligence on the part of petitioners in the preparation of the case for trial and in their efforts to have their witnesses present; but petitioners by counsel refused to file such affidavit in support of petitioners' application for a continuance, whereupon the Commission announced that it had no alternative left but to dismiss the petition in this case.

"However, before dismissing the case, the Commission announced that in 1923, after an exhaustive hearing and an appraisal of all the properties of the Cumberland Telephone & Telegraph Company in Tennessee, said company being the predecessor of the Southern Bell Telephone & Telegraph Company, it had fixed a rate base on all of said property in the State of Tennessee, and that since said date the Commission, through its engineers and auditors, had kept in touch with the operations of the Southern Bell Telephone & Telegraph Company in the State at all times so as to determine whether or not said company was making an excessive return on its investment in the State, and that after the petition in this proceeding was filed, as a matter of precaution, the engineers and auditors of the Commission were sent to Atlanta, Georgia, to make a further investigation into the books and records of said company to ascertain whether or not

said company was making an excessive return and whether or not petitioners were entitled to any relief in this proceeding. From the records on file with the Commission, reflecting the operations of the Southern Bell Telephone & Telegraph Company, and from the report of the engineers recently made to the Commission as a result of their investigation, the Commission finds that said company is not earning more than it is entitled to under the law on its investment in the State of Tennessee.

"IT IS THEREFORE ORDERED BY THE COMMISSION:

"That petition filed by Thomas J. Williams, Jr., et al. in this proceeding be and the same is hereby dismissed."

With respect to this order of the Commission, the petition for *certiorari* concludes:

"Petitioners avers that the Commission was prejudicial in its findings; was antagonistic and prejudiced against petitioners; unqualified to render a just and fair decision; that its attitude is clearly shown by Exhibit 'A' (the record of the proceedings before the Commission); that it has failed to faithfully administer its duties to the public and petitioners.

"Petitioners aver that they are entitled to a court trial and determination of the matters aforesaid; that the commission erred in declaring the present rates, tolls and charges legal and reasonable in Tennessee and City of Chattanooga."

██ *McCollum* v. *Southern Bell Telephone & Telegraph Company,* 163 Tenn., 277, 43 S. W. (2d) 390, was an action brought by a telephone user in the Chancery Court of Hamilton Company for relief against rates alleged to have been unreasonably and unjustly high, "upon the

theory that the chancery court has original jurisdiction to fix rates." It was therein ruled by this Court, following universal authority, that the power to fix rates to be charged by public service companies is a legislative power and not a judicial power, and that the effect of the Act creating the Railroad and Public Utilities Commission (Acts 1919, chapter 49) is "to confer upon the commission exclusive jurisdiction, in the first instance, to establish reasonable rates and charges."

In *Re Cumberland Power Company*, 147 Tenn., 504, 249 S. W., 818, the status of the Railroad and Public Utilities Commission as an administrative body, and not a court, was recognized and adjudged. Of its rate fixing power, this Court said:

"To make rules for the future, which is legislative in its nature. This delegated legislative power is characteristic of administrative tribunals. While courts have the power to make rules, these are limited to rules for their own procedure and are not rules for the government of human conduct. The rule-making function is legislative in its nature, distinct from the *quasi*-judicial function, in that such rules are made for future conduct, whereas the settlement of controversies affects only the legality of past acts."

The jurisdiction of courts to review the exercise of the rate-fixing power by an administrative body was stated in the same case, quoting from *Western Union Telegraph Co.* v. *Myatt (C. C.)*, 98 Fed., 341, as follows: "When the legislature has once acted, either by itself or through some supplemental and subordinate board or body, and has prescribed a tariff of rates and charges, then whether its action is violative of some constitutional safe-guard

or limitation is a judicial question, the determination of which involves the exercise of judicial functions.''

In the case now before us, the record wholly fails to indicate that the Commission acted arbitrarily or in excess of a reasonable discretion in requiring the petitioner to file evidence of reason or necessity for a postponement of the hearing on the complaint. The order previously entered set the matter for full hearing on the date fixed, and did not limit the hearing to the preliminary motions. Conceding some merit to the contention of the petitioner that a granting of the motion for permission to inspect the records of the telephone company would have made necessary a postponement of the final hearing, and that it would have involved burdensome expense to summon witnesses for the date fixed and then have them return on a future date, it was a reasonable requirement of the Commission that an affidavit be prepared and filed, representing that witnesses would be available by whom the facts charged in the complaint could be established. The postponement was denied and the complaint was dismissed because counsel declined to comply with that requirement.

It appears therefore that petitioner has merely gone through the form of invoking action by the Commission on the complaint filed, and that there has been no hearing or action taken on proof offered to sustain the complaint. The ruling in *McCollum* v. *Southern Bell Telephone & Telegraph Co., supra,* is meaningless and empty, if the jurisdiction of the Commission can be avoided by the simple expedient of failing to adduce evidence to sustain the complaint and refusing to comply with the Commission's reasonable requirement for a showing of a right to a continuance or postponement of

the hearing, and then seeking a hearing *de novo* in the circuit court by *certiorari*. Such procedure is, we think, to trifle with the Commission and with the courts, and we hold that the complaint was abandoned when the complainants failed to offer evidence to sustain it and refused to seek a postponement in the required form.

In this condition of the record, the petition addressed to the circuit court was in effect the institution of an original action, invoking the judgment of that court with respect to the reasonableness of the rates fixed by the Commission. The circuit court was without jurisdiction of the subject-matter, for the reasons stated in *McCollum* v. *Southern Bell, etc., Company, supra,* and the petition was properly dismissed whether on the plea filed or on the court's own motion and initiative. A court cannot acquire jurisdiction of the subject-matter of an action by consent of the parties, whether express or implied from a failure to make objection in proper form.

Nothing herein is intended to indicate the opinion of the Court that the reasonableness of rates fixed by the Railroad and Public Utilities Commission may or may not be reviewed by *certiorari* at the suit of citizens or the public, in any event. That question does not arise when it appears that the complaining party abandoned his complaint without action on its merits by the Commission, under the circumstances stated.

The common-law writ of *certiorari* would have afforded petitioner ample relief against any arbitrary or oppressive action of the Commission, amounting to an abuse of discretion or a refusal to perform the statutory duties with which it is charged. *Connors* v. *City of Knoxville,* 136 Tenn., 428, 189 S. W., 870; *City of Knoxville* v. *Connors,* 139 Tenn., 45, 201 S. W., 133. And if

petitioner had complied with the ruling of the Commission as to the form in which the application for postponement of the hearing should be made, an arbitrary and oppressive denial of the postponement could have been corrected by the common-law writ of *certiorari,* with the result that the active status and pendency of the complaint before the Commission would have been restored. But the action of the Commission was brought about by an arbitrary refusal of petitioner's counsel to comply with an obviously reasonable ruling of the Commission, and the essential basis for interference with the Commission's order by the common-law writ of *certiorari* is lacking.

The judgment of the circuit court, quashing the writ of *certiorari,* will be affirmed, at petitioner's cost. The judgment to be entered here will include the direction of the circuit court that the proceedings had will not prejudice the prosecution of any new complaint the petitioner or his associates may choose to file with the Railroad and Public Utilities Commission.