TRENT *v.* TENNESSEE PUBLIC SERVICE CO.

(*Nashville*, December Term, 1936.)

Opinion filed January 18, 1937.

HUGH C. SIMPSON, of Knoxville, for appellant.

CATES, SMITH & LONG, and CHARLES H. SMITH, JR., of Knoxville, for appellee.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

This cause is before the court on the appeal of complainant from the decree of the chancellor sustaining defendant's demurrer to the original bill and dismissing the same.

It appears from the bill that complainant conducts a commercial job printing business in the city of Knoxville; that he purchases electrical current from defendant as a means of supplying his plant with power and light essential to the operation of his printing presses and other machinery used in his business, and also for light used in his residence, which is located on the same premises as his business plant; that it is the duty of defendant to furnish electrical current to the public generally without discrimination and at a reasonable rate; that in October, 1933, defendant reclassified complainant as a consumer of electrical current in such a

manner, as to increase the rate and cost of the current furnished him and thereby charged him an exhorbitant and confiscatory price.

It appears from the bill that the defendant, with the approval of the Railroad and Public Utilities Commission, has fixed some thirty or forty different rates, designed to fit as many different classes of consumers. Complainant insists that he should be granted a rate known as "F-2" under the defendant's code of rates, while defendant insists that the rate known as "C-4" is applicable. The reasons why complainant is of the opinion that the rate "F-2" should be granted him are fully set forth in the bill. The prayer of the bill, among other things, was that by decree "the defendant be ordered to place the complainant under the classification whereas he will be charged only a reasonable rate for the electrical energy purchased by him," and that the defendant be enjoined and restrained from disconnecting and discontinuing its service to complainant, as it has threatened to do.

A temporary injunction, in accordance with the prayer of the bill, was granted by the chancellor.

Defendant demurred to the bill on the following grounds, in substance: (1) That the court was without jurisdiction to determine the rate to be charged by defendant, or the classification of rates, or their enforcement, because these matters are under and within the sole jurisdiction of the Railroad and Public Utilities Commission of Tennessee; (2) that the bill shows the rate charged by defendant for its services to complainant is fixed by the Railroad and Public Utilities Commission, and if complainant is entitled to any relief, such relief can only be granted by and through said com-

mission, which has full and sole control over the acts and doings of the defendant complained of; (3) that the bill shows that the particular rates and classification complained of in the bill have been approved by said commission.

Defendant also filed a written motion to dissolve the injunction upon the ground that the effect of the injunction was to restrain defendant from complying with, or enforcing, its just and proper charges as approved by the orders of the Railroad and Public Utilities Commission. Complainant moved to dismiss the motion to dissolve the injunction because waived by the filing of a demurrer. This motion was overruled.

The chancellor sustained the demurrer, dissolved the injunction, and dismissed the bill.

On his appeal to this court, complainant has made three assignments of error. The first of these is, in substance, that defendant waived its motion to dissolve the injunction by previously filing a demurrer. When the chancellor sustained the demurrer and dismissed the bill, such dismissal operated *ipso facto* as a dissolution of the interlocutory injunction based upon it. Gibson's Suits in Chancery, section 849. Hence, had defendant not moved to dissolve the injunction, it would have fallen with the bill. The question sought to be made by the assignment has become moot by the dismissal of the bill.

The second assignment of error is, in substance, that the chancellor erred in sustaining the demurrer (a) because the chancery court had jurisdiction of the cause, and (b) the Railroad and Public Utilities Commission is not a court vested with judicial powers essential to adjudicate complainant's rights in the premises, but is an administrative body vested with the legislative func-

tion of defining the rules and regulations of conduct and the fixing of rates of public utilities.

Complainant's contention is that he should not be separately charged with the power, commercial lighting and residential rates as defendant insists, but that the whole service should be classified under the power rate, the lowest of the three, because his consumption of electrical current for the other two purposes was comparatively inconsequential. Thus a question as to the proper and legal rates applicable to electric current used by complainant is presented.

The powers and jurisdiction of the Railroad and Public Utilities Commission over public utilities are to be found in sections 5448 to 5470, inclusive, of the Code.

Section 5468 provides, in part, as follows:

"The commission is empowered to employ such rate experts, engineers, attorneys, accountants, auditors, inspectors, examiners, clerks, agents or other employees, and assign to them such duties, as it may deem necessary to enable it to fully perform the duties, and to exercise the powers conferred by law upon the commission."

Section 5469 is as follows:

"Any person so employed by the commission may be assigned by said commission, to investigate, hear, and, wherever possible, adjust any individual or general complaint made by any person against any such public utility, wherein its investment, property, service charges, or claims preferred against it, may be involved; and may hear and take proof, and, in the event he is unable to effect a satisfactory adjustment of any such complaint, then it shall be his duty, to certify the same, to the said commission with his recommendations in the premises, whereupon said commission shall, after hearing, make

its final order which shall be binding upon the parties to any such controversy."

The complaint made in this cause is one falling within the provisions of section 5469. Hence it should have been presented to the commission and not to the court. Under section 5458 it is provided that the statute should not be construed as being in derogation of the common law, but shall be given a liberal construction, and any doubt as to the extent or existence of a power conferred by the statute on the commission shall be resolved in favor of the existence of the power, to the end that the commission may effectively govern and control the public utilities placed under its jurisdiction by the statute. So construed, it seems clear that the original jurisdiction to determine the question of which, if any, of the several rates is applicable to a purchaser of electric current from a public utility, under the peculiar or particular conditions and circumstances surrounding its use by the purchaser, is left with the commission. The determination of such question is essentially the fixing of a rate, and therefore within the exclusive jurisdiction of the commission. In *McCollum* v. *Southern Bell T. & T. Co.*, 163 Tenn., 277, 282, 43 S. W. (2d), 390, 391, this court held that the effect of the act creating the Railroad and Public Utilities Commission is "to confer upon the commission exclusive jurisdiction, in the first instance, to establish reasonable rates and charges."

As above indicated, the controversy concerns rates and the application of rates and service charges, and, as we think, is a matter falling, primarily, within the jurisdiction of the Railroad and Public Utilities Commission.

The decree of the chancellor is therefore affirmed. Complainant will pay the costs of the appeal.