268 S.W.2d 103 (1953)
KING et al.
v.
ELROD et al.
Supreme Court of Tennessee.
December 11, 1953.
On Petition to Rehear May 21, 1954.
*104 Ely & Ely, Knoxville, for appellants.
Grimm, Tapp & Carson, and Ray H. Jenkins, Knoxville, for appellees.
BURNETT, Justice.
The bill in this cause was filed asking a mandatory injunction, the removal of a lock across a roadway leading to a cemetery and for damages double the amount suffered by the complainants. The gravamen of the bill is that the defendants, appellees here, had desecrated and destroyed an ancient family cemetery in which distant relatives of the complainants had been buried. A demurrer setting forth numerous grounds was filed in due season and after argument the demurrer in all particulars was sustained and the bill dismissed. A motion for rehearing was filed which after being overruled the case was appealed to this Court and is now before us for determination.
The bill being demurred to we take the factual situation averred in the bill as true. It is alleged that this cemetery was set aside as a private cemetery prior to the Civil War and first known as the "Ferguson Cemetery"; that later one Lige Flenniken purchased the land and thereafter many Flenniken heirs were buried in this graveyard and it then became known as the "Flenniken Cemetery".
In 1944 the defendants, appellees here, purchased a farm in Knox County on which this cemetery was situated, it being on the south side of what was then the Tennessee River, now Fort Loudon Lake and situated on a knoll overlooking this lake. In 1862 ancestors of one of the complainants were buried in this cemetery *105 and some time about the Civil War an ancestor of the complainant King was buried in this cemetery. From that time on up until 1922 various people were interred in this plot of ground.
The plot of ground upon which this cemetery is situated is approximately 150 feet by 200 feet in dimensions. The bill alleges "that to carry out this scheme the defendants proceeded to landscape said knoll and surrounding grounds with the aid of dynamite, a bulldozer and other equipment, blasted a number of large and beautiful trees out of the graveyard and proceeded to level off the terrain with the bulldozer and in these operations pushed aside all of the headstones and footstones of the graves and completely obliterated the cemetery as it had existed for many many years." This averment of the bill which we take as true follows averments that the defendants, appellees here, were planning to use this knoll where this cemetery was as the location of a residence. It is further alleged in the bill that in an effort to carry out this wicked and unlawful scheme of the defendants that they "proceeded to level the graveyard off for the sole purpose of eradicating said cemetery and using the same for their own purposes." It is further said: "These complainants charge that the defendants have maliciously and unlawfully trespassed upon this plot of hallowed ground located upon their farm and proceeded to wipe its identity from the face of the earth."
After these averments the plaintiffs aver that what the defendants, appellees here, have done is a "distinct violation of the penal code of Tennessee, particularly Code, Section 10886 which section, in addition to the penalty imposed, provides that the parties so injured are entitled to recover damages in double the amount of the injuries sustained and they would show the court that these complainants on behalf of themselves and all other persons interested in said cemetery, are entitled to a judgment for said damages."
Allegations are also contained in the bill that the defendants have obstructed the right-of-way of the complainants and others to the graveyard by stretching a large log chain across the entrance and placing a padlock thereon and marking this "no trespassing" and that these activities of the defendants have prohibited complainants and others from visiting the graveyard, all of which it is said is a part of the defendants, appellees here, scheme to obliterate and forever destroy the graveyard.
The complainants then pray for a mandatory injunction requiring that the defendants remove the padlock and restore the graveyard to its former condition by replanting trees and replacing headstones and footstones, etc., then there is a prayer that the injunction be made permanent and that the complainants be awarded damages in double the amount of the injuries sustained by them.
It is not necessary for us in disposing of the matter, in our view of the matter, to take up each of the grounds of the demurrer as interposed in this case. There are only two assignments of error, the first of which considers really all of the grounds of demurrer as a whole and the second is to the overruling of the petition to rehear.
Ordinarily equity will enjoin an unauthorized encroachment upon, or use of, lands dedicated to public burial purposes. It is universally recognized that the sentiment of mankind, the right to decent burial is well guarded by the law, and relatives of a deceased are entitled to insist upon legal protection for any disturbance or violation of this right. 10 Am. Jur., 503. At common law the disturbance of a grave is an indictable offense as highly indecent and contrary to good morals. In this State it is made a misdemeanor by Statute, Code, § 10886. As a matter of academic interest the question of suits of various types for a desecration and violation of the rights of those having dead relatives buried in a graveyard, is very interestingly discussed in an annotation in 172 A.L.R. 568. In the accumulative supplement to Am. Jur., under Cemeteries, Sec. 39, will be found quite an extensive statement *106 and annotation on this subject at page 33 of the supplement.
As we view this case it largely comes down to the question of what is the obligation and necessity of a Chancery Court under the admitted facts. The usual office of an injunction is to restrain actual or threatened acts which are injurious to one's rights and not to compel the undoing of the wrong. But of course there are mandatory injunctions wherein one is compelled to undo the wrong that has been done by him, but "the rule is that a mandatory injunction such as asked for in this case will not be granted except in extreme cases, and when courts of law are unable to afford adequate redress, or when the injury complained of cannot be compensated in damages." Post v. Southern Railroad Co., 103 Tenn. 184, 216, 52 S.W. 301, 309, 55 L.R.A. 481, citing Gibson's Suits in Chancery, pages 784, 806; 1 High on Injunctions, page 3, 3 Pomeroy's Equity Jurisprudence, page 1359; Hall v. Railroad, 12 A.M. and Eng. R.R., cases 41. This statement, last quoted, is expressly approved by this Court speaking through the late Chief Justice Grafton Green in Union Planters' Bank & Trust Co. v. Memphis Hotel Co., 124 Tenn. 649, 658, 139 S.W. 715, 39 L.R.A., N.S., 580. And it is a universally well recognized rule today. As is said "such an injunction is a rather harsh remedial process and is not favored by the courts." 28 Am. Jur. Sec. 17, page 210. In granting any injunction whether prohibitory or mandatory it is "in the exercise of a sound judicial discretion", 28 Am. Jur., Sec. 20, page 213. "And in conformity with the settled equitable principles and considerations." It is also to be noted that when a court is asked to interpose a mandatory writ it is very reluctant to do so for obvious reasons. "When the court is thus asked to undo something that has been done, it must, for obvious reasons, act in a careful and conservative manner and grant the relief only in situations which so clearly call for it as it may inflict on the defendant the very irreparable injury which it is alledged he has done or is about to do against the plaintiff" Am. Jur., supra. The case in which a mandatory injunction is granted by the Chancellor should be a clear one and show that the only real remedy that the party asking the mandatory injunction has is the injunction. See Union Planters' Bank & Trust Co. v. Memphis Hotel Co., supra, 124 Tenn. 649, 139 S.W. 715, 139 L.R.A., N.S., 580. Whether or not such injunction should be granted is a question that the court must use its judgment on with reference to the special circumstances of each case, and the court's action thereunder will not be disturbed on appeal unless it clearly appears from the record that there has been an abuse of such discretion.
We have very painstakingly and carefully read and reread this bill and the briefs of both parties. It seems to us, after so doing, that the Chancellor did not abuse his discretion and was clearly right in refusing the injunction in this case. The reason that we say this is that it appears from the facts averred in the bill that the cemetery had been completely obliterated, the gravestones graded off, etc., to such an extent where the only obvious inference is that there was no longer a graveyard there. Under such a state of facts it would certainly not foist good will to require the parties to reinstate or rebuild the old graveyard on the spot where it had been before. There are many obvious reasons of why in the first place this would be entirely impractical and in the second place there would always be the ill will of those visiting the graveyard and those living around, one toward another to such an extent that under our American system there would be constant litigation, bickering and quarreling between the parties. Under such circumstances it seems to us that the Chancellor was eminently correct in denying the injunction.
This being true of course then there was no ground for equity to take jurisdiction. When equity had no jurisdiction the court of Chancery had no right to award unliquidated damages under the rights of the parties as alleged herein. See Union Planters' Bank & Trust Co. v. *107 Memphis Hotel Co., supra. This being true a statement from Gibson's Suits in Chancery, 4th Edition, pages 257, 258, Sec. 289, is particularly applicable because now the parties are left to their right in a suit for damages. Judge Gibson said:
"There are cases where pecuniary compensation by way of damages is manifestly the appropriate remedy, and a specific performance impracticable, if not impossible. There are matters which estop a complainant from setting up what would otherwise have been legal or equitable rights, and thereby defeat his suit.
"In all such cases, and, also in all criminal cases, and cases of a criminal nature, a Court of Equity refuses to take jurisdiction, because there is in them a manifest want of Equity; and bills in such cases may either be dismissed on motion for want of Equity, or special demurrer will lie to the bill."
As above said parties who desecrate a graveyard as alleged in this bill are subject to indictment at common law and likewise under our Code, Sec. 10886. Courts of Equity universally do not render their aid to enforce a penalty or a forfeiture but leave the party to his legal remedy. Gibson's Suits in Chancery, page 262, Sec. 296.
For this reason it seems to us that the Chancellor was correct and we therefore must affirm his decree and dismiss the bill and leave the parties to their remedy at law and whatever prosecution seems necessary under the criminal statute.

On Petition to Rehear.
The original complainants, appellants here have filed herein a forceful, courteous and dignified petition to rehear. We have read and re-read this petition along with the original bill and demurrer and our original opinion heretofore rendered in this cause.
The burden or gravamen of our original opinion is to the effect that a mandatory injunction would not lie under the facts set forth in the original bill. In the petition to rehear it is very forcefully argued that the mandatory injunction as prayed for in the bill was not the sole purpose of the bill but that the bill also sought an injunction restraining the defendants from interfering with the public and particularly the complainants and those entitled to visit the graveyard. It is argued, very forcibly, that by the original opinion we have denied an injunction and therefore have kept the complainants and those similarly situated from having the right to visit this graveyard and by thus holding that we have in effect overruled certain former decisions of this Court and the Court of Appeals of this State, to wit, Hines v. State, 126 Tenn. 1, 149 S.W. 1058, 1059, 42 L.R.A., N.S., 1138, and other cases holding to the same effect. The holding in the Hines case and those holding to the same effect is that people in the situation of complainants in this cause "have the right to visit the cemetery for the purpose of repairing, beautifying, and protecting the graves and grounds around the same, and for these purposes they have the right of ingress and egress from the public road nearest the cemetery, to be exercised at seasonable times and in a reasonable manner."
By our original opinion we had no intent, nor do we now, of overruling those cases and the rights of relatives, heirs, etc., to visit and beautify the cemetery and graves of their loved ones.
The question is asked in the petition to rehear:
"Do not all lawsuits engender ill will? Yet, relief, as far as we have been able to learn, has never been denied on this ground."
Of course in our opinion we were not determining the lawsuit on this question. It is true that in effect that most lawsuits at the time, and especially those that are personal, engender ill will. The courts do not determine lawsuits on this question but when it is seen that determination of a lawsuit one way or the other when it can be thus determined will create a great many lawsuits while determination of another *108 way will put an end to litigation and not engender ill will, lawsuits sometimes are determined in this way. At least it seems to us that this is a reasonable way to reason a matter out. We are not determining this lawsuit on this question at all. It was merely a statement of the writer of the opinion and an additional reason of why the mandatory injunction should not be granted.
The original opinion, and it is likewise now our opinion, held that the gravamen of the bill (factually admitted by the demurrer) is to the effect that by the action of the defendants they had "proceeded to wipe its identity from the face of the earth." This allegation is contained in the bill after averments of many facts of what the defendants had done to the cemetery. By the language above it is clearly shown that the defendants "had wiped its identity from the face of the earth", that is, had completely obliterated the cemetery or anything surrounding it. Consequently it seems to us that if the cemetery had been completely wiped from the face of the earth, and there is no longer any cemetery there is certainly no cause shown in the bill, facts of which are admitted on demurrer, wherein an injunction would lie to prevent the defendants from keeping others off of the property. There are no longer any graves or things of the kind for people to visit and beautify, etc. Clearly if it was shown that a graveyard was being bothered or trespassed on and that the people who were entitled to get to it were being kept off the Chancellor should enjoin such a thing as was done in the Hines case and others, but when the graveyard had been completely obliterated there is no longer anything to do except to leave the parties to their actions at law as was indicated in our original opinion.
Many, many years ago Mr. Justice Story, in Jenkins v. Eldredge, Fed. Cas. No. 7267, 3 Story 299, made a statement which is very applicable in the present situation. This statement is:
"During a pretty long period of judicial life, it has been my misfortune on many occasions to have differed widely from counsel on one side or the other, in important causes, as to the merits thereof. But this, although a matter of regret, could not, as it ought not, in any, the slightest degree, to influence the duties or judgment of the court."
We have given special thought to this petition to rehear and for the reasons above stated must overrule it.