C. M. Breeden *et al. v.* Southern Bell Telephone and Telegraph Company, Inc.

*(Knoxville,* September Term, 1955.)

Opinion filed December 9, 1955.

204

CLARENCE A. BALES and J. CARL LAMBDIN, both of Jefferson City, for appellants.

HALE & WISECARVER, of Jefferson City, and BASS, BERRY & SIMS, of Nashville, for appellees.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This suit was filed by a group of citizens and taxpayers of Jefferson County against Southern Bell Telephone & Telegraph Company. The purpose of the suit was, first, a mandatory injunction requiring the Telephone Company to extend its service to a community known as Kansas Community and, second, for the penalty provided under Code Section 3107 of Williams' Annotated Code because it is averred that the Company failed to make an extension of their service upon due request.

The bill alleges that those bringing the suit live in a community or area of Jefferson County known as the Talbott-Kansas area; that this area has never been furnished telephone service by the Company but is within the territory covered by the franchise in Jefferson County; that the complainants have filed application for service which was received by the Company, some of them extending back as much as eight years prior to the filing of the bill; that the Company has not extended its lines to this community but has extended service to other areas in the County alleged to be similarly situated; that the failure of the Company to provide these services to complainants was an intentional and wrongful discrimination against these complainants—

the appellants; that by reason of this discrimination they are entitled to the penalty as provided by statute.

The Telephone Company demurred to the bill because first it is said the bill shows on its face that it seeks a mandatory injunction requiring the defendants to extend facilities in an area three or four miles long and that extension of such services is a matter beyond the jurisdiction of the court and; two:

The extension of the utilities facilities is an administrative and legislative matter lying within the jurisdiction of the Railroad & Public Utilities Commission of this State and that under applicable regulatory statutes, including particularly Williams' Annotated Code Sections 5447 and 5451. This jurisdiction in the first instance is exclusive of other legal remedies; and, three: That the bill fails to show that complainants have exhausted their administrative or legislative remedies as provided by Code Section 5451 by application to the Railroad & Public Utilities Commission of this State.

The bill was also demurred to and the demurrer directed particularly to that part which seeks the penalty or money judgment on the grounds that, one, the facts alleged in the bill do not entitle the complainants to a monetary judgment because there is no discrimination within the meaning of such in Code Section 3107, and, two, that even if there were a discrimination within the meaning of this Code Section that the complainants still have an adequate remedy at law and, three, this portion of the bill shows on its face that its object is to enforce a penalty to which a court of equity will not lend its aid.

The Chancellor sustained the demurrer and the complainants seasonably excepted and have prayed an appeal. Briefs have been filed and arguments have been heard

on both sides of the questions. We now have the matter for determination.

As a matter of fact when these various grounds of demurrer are boiled down there really are only two questions in this litigation. The first of these questions is, Does the Chancery Court have jurisdiction to order the Telephone Company to extend its lines to the community where these appellants live and to furnish them with telephone service? The second question is, admitting the factual situation, as we must, as averred in the bill under the demurrer, has the Telephone Company failed and refused to extend its service to these appellants or does their failure to extend their service to these appellants constitute a discrimination within the meaning of Code Section 3107 of Williams' Annotated Code?

In this jurisdiction the Public Utilities Commission Law, the original Act of 1897 creating the Railroad Commission has been amended several times subsequent thereto and primarily beginning with Chapter 49 of the Public Acts of 1919, is carried in the Code in Chapter 23 thereof beginning with Code Section 5380 and extending through Code Section 5470.2. Thus for more than one-half of a century this enactment has been the declared public policy with reference to public utilities. During all of this time the exclusive jurisdiction of the Commission, in the first instance, over public utilities has been questioned about various things but has always been resolved in favor of the Utilities Commission's exclusive jurisdiction on the question of rates, etc., in accordance with the general authorities over the United States touching such questions. The Act has been held constitutional. *City of Memphis* v. *Enloe,* 141 Tenn. 618, 214 S. W. 71. It is modeled after the Federal Interstate Commerce Act of 1887, 49 U. S. C. A. Sec. 1 et seq., which

has been upheld by the Supreme Court of the United States in numerous decisions. *Fargo* v. *State of Michigan,* 121 U. S. 230, 7 S. Ct. 857, 30 L. Ed. 888, and others. We have likewise held in conformity with the authorities generally that this Utilities Commission is an administrative body and is not a court, and that the power conferred upon it to do the things that it does is legislative and not judicial. *In re Cumberland Power Co.,* 147 Tenn. 504, 249 S. W. 818, and others.

As far as we can tell from the pleadings, briefs and arguments herein the constitutionality or the makeup of the present Public Utilities Commission Act is not questioned, but it is argued that this Act does not require that the appellants here make application to the Public Utilities Commission for this telephone service before bringing suit. It is the contention of these appellants that as long as they have given the Telephone Company notice and have asked for this service and the service has not been rendered, then that they have a right to go into court and by mandatory injunction require the Telephone Company to put this service at the disposal of these appellants in the same manner as it does to others wherein they have their lines, etc. Insofar as it has been cited to us or we can find there is no case exactly in point holding that the Utilities Commission does have the authority, in the first instance, to determine whether or not the Telephone Company runs lines in the community of these appellants. As we read the Act, it is clearly a matter that the legislature, in creating the Public Utilities Commission, has determined that this Commission shall in the first instance have jurisdiction to determine whether or not the Telephone Company does give this service to the people in a position as are the appellants herein.

Code Section 5447 provides:

"The railroad and public utilities commission shall have general supervision and regulation of, jurisdiction, and control over, all public utilities, and also over their property, property rights, facilities and franchises, so far as may be necessary for the purpose of carrying out the provisions of this statute. Provided, however, that such general supervision and regulation of and jurisdiction and control shall not apply to street railway companies."

The next section of the Code defines what Public Utilities are. Clearly Telephone Companies come within this Act. As a matter of fact this Court in *McCollum* v. *Southern Bell Tel. & Tel. Co.,* 163 Tenn. 277, 43 S. W. (2d) 390, has so held. In that case this Court held that when application had not been made to the Public Utilities Commission for relief that the Court did not have jurisdiction to fix rates.

Code Section 5451, sub-divisions (a) and (b), all of which is part of the general Public Utilities Commission Act above referred to, provides:

"The commission shall have power, after hearing, upon notice, by order in writing, to require every public utility as herein defined: (a) Proper service.—To furnish safe, adequate, and proper service and to keep and maintain its property and equipment in such condition as to enable it to do so.

"(b) Extensions or abandonment thereof.—To establish, construct, maintain, and operate any reasonable extension of its existing facilities where in the judgment of said commission such extension is reasonable and practicable, and will furnish sufficient business to justify the construction, operation, and maintenance of the same, and when the financial

condition of the public utility affected reasonably warrants the original expenditure required in making such extension, or to abandon any service when in the judgment of the commission the public welfare no longer requires the same. * * *''

Telephone and Telegraph Companies are said to be ''in a strict sense common carriers'' and are thus comparable, and are compared, with railroad companies and other similar utilities. *Vaught* v. *East Tennessee Telephone and Telegraph Co.,* 123 Tenn. 318, 130 S. W. 1050, 31 L. R. A., N. S., 315. We thus have authority for the proposition that in considering whether or not it is up to the Utilities Commission to determine areas that would be proper to order a telephone company to go in and furnish their facilities to the people, that we can compare this with such other matters as the. Utilities Commission has acted on, as granting certificates of convenience and necessity to motor carriers and to the railroads. The same governing principle is carried forth in the question now before us as it would be in a number of other things which this Commission has acted- upon. A certificate of convenience and necessity granted or denied by the Railroad and Public Utilities Commission represents the judgment of that commission upon facts presented to the Commission or a study made by the Commission through its own experts on matters with which it deals.

The Supreme Court of Kansas in *Kansas Gas & Electric Co.* v. *Public Service Commission,* 124 Kan. 690, 261 P. 592, 594, in reference to a similar act to that in question here, has said:

''If it desired to extend its service to other communities, a certificate of convenience and necessity for such extension must be obtained from the commission and as to extensions it was subject to the

same restrictions as utilities admitted to do business in the state after the Public Utilities Law was enacted, and to the same control as to regulations and service. If the commission is vested with power to regulate and limit the extent of territory in which a utility may extend its operations, and thus prevent wasteful competition and duplication of service, which would tend to cause inconvenience to the public and increase the cost of electric current to consumers, the plaintiff has no reasonable cause of complaint.''

Our Act, portions of which we have above quoted, is a very elaborate one. It gives the Railroad & Public Utilities Commission full power and authority to supervise and control all public utilities, and nothing in it indicates a purpose that any of the utilities doing business in this State can escape this supervision and control or can claim a preference over another utility engaged in the same public service.

It is forcibly argued that by Code Section 5458 (a section of the Utility Act) that the Act shall not be construed in derogation of the common law. This same section also provides that the Act shall be liberally construed and ''shall be resolved in favor of the existence of the power, to the end that the commission may effectively govern and control the public utilities * * *.'' This is clearly a legislative directive to do what is here being done.

And again this Court has recognized that the purpose of Chapter 10 of the Public Acts of 1897 (creating the Railroad & Public Utilities Commission) requires an exclusive power in the commission as to administrative or legislative matters concerning railroads. This Court there speaking through the late Chief Justice Grafton

Green held that one of the criminal statutes of this State, imposing a fine upon a Railroad Company for not furnishing adequate depot facilities, was not liable under this criminal statute because it had been superseded, by implication, by the Railroad & Public Utility Act referred to. *Cincinnati, N. O. & T. P. R. Co.* v. *State,* 148 Tenn. 127, 252 S. W. 1000.

Thus it will be seen by a review of the cases referred to above, particularly the McCollum case that where the Railroad & Public Utilities Commission has jurisdiction under the Act that this is a primary jurisdiction and must be appealed to before the courts have jurisdiction thereof. The Pennsylvania Supreme Court in *St. Clair Borough* v. *Tamaqua & Pottsville Electric Railway Co.,* 259 Pa. 462, 103 A. 287, 289, 5 A. L. R. 20, uses this very pertinent language:

"Since the Public Service Company Law has been upon our books, we have consistently adhered to the rule that matters within the jurisdiction of the commission must first be determined by it, in every instance, before the courts will adjudge any phase of the controversy (citing other Pennsylvania cases); and it is plain that orderly procedure requires an adherence to this practice, otherwise different phases of the same case might be pending before the commission and the courts at one time, which would cause endless confusion. Under the established system, the commission, in the first instance, passes upon all changes of rates made by public service corporations, (we have that direct ruling on the question of rates in the McCollum case, supra) subject to a proper and well-regulated review by the courts, (see *Hoover Motor Express Co., Inc.,* v. *Railroad & Public Utilities Commission,* 195 Tenn. 593, 261 S.

W. (2d) 233) where and when all questions of law may be raised and determined; and 'this is so not because the courts have any desire to avoid the performance of duties cast upon them by the law, but because the people, speaking through the Legislature, have declared that these duties shall be performed by a special tribunal created for the purpose.' "

We think that this quotation meets and answers the question posed by the first four grounds of demurrer to the bill in this case and as stated in question number one at the outset of this opinion. See also an excellently reasoned opinion by the Supreme Court of the United States in *Texas & Pacific Railroad Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, on the same question of primary duty. The language of this United States Supreme Court case, the Abilene case, was quoted by this Court with approval in *McCollum* v. *Southern Bell Tel. & Tel. Co.*, supra [163 Tenn. 277, 43 S. W. (2d) 391], and this Court there added:

"The legal profession has generally so construed the act, and we think there can be no doubt but that the Legislature intended to confer upon the commission exclusive jurisdiction, in the first instance, to establish reasonable rates and charges."

We can add, in the instant case, that we think the same language is applicable herein. Before the Telephone Company can be required to serve the people of a community such as that in which the appellants live the Railroad & Public Utilities Commission must hear the matter and grant the necessary certificate therein.

We now come to the portion of the bill in the instant case which charges that the Telephone Company failed to provide adequate service for the people of the community

in which the appellants reside and that the failure of the Telephone Company so to do constituted such a discrimination as to make the company liable for the penalty under Code Section 3107.

██ ██ This statute grants certain privileges to telephone and telegraph companies. It provides that these companies shall either furnish transmission or act as a means for conveying intelligence and news among others impartially and without discriminating against any individual or company.

"A telegraph or telephone company, as a public service corporation, is bound to serve the public faithfully, impartially, and without discrimination, and is liable in damages for the failure to exercise due diligence in the performance of its duties in regard to receiving, transmitting, and delivering messages intrusted to it." 52 Am. Jur., Sec. 172, p. 205. The statute above referred to, 3107 of the Code of Tennessee, is merely declaratory of common law obligations in imposing penalties for the discrimination of the telephone company. *Vaught* v. *East Tennessee Telegraph Co.*, 123 Tenn. 318, 130 S. W. 1050, 31 L. R. A., N. S., 315, Ann. Cas. 1912C, 132.

██ It seems perfectly obvious to us that if we are right in the conclusion that we have reached in answer to the first question above, that is, that before the appellants, people of this community, can complain in court about not being served by the telephone company that they must first make known their application to the Railroad & Public Utilities Commission, that then it necessarily follows that the appellants are not entitled to the penalty under the Code Section above, 3107, or under the common law. Before the telephone company can discriminate against these people it must be an

obligation of the telephone company to supply these people with telephone service. Until the Railroad & Public Utilities Commission authorizes the telephone company to serve this community they are not authorized or obliged to serve this community. If they are not authorized or directed to serve the community clearly they cannot be guilty of a discrimination here among these people.

Under a similar statute in the State of Nebraska the court of last resort of that State in passing upon a related question in *Rivett Lumber & Coal Co.* v. *Chicago & N. W. Ry. Co.,* 102 Neb. 492, 167 N. W. 570, 571, said:

"Where there is attempted discrimination between persons and associations, and a person or association is not allowed 'reasonable and equal terms, service, facilities and accommodations,' the statute in question affords proper and prompt redress by the courts. But when the question is whether a community or locality is properly served by the railroad company, the question of rates is involved, and many other questions and conditions that affect generally all the service afforded by the railroad company, not only at that locality, but in other localities also, and such questions are peculiar within the province of the State Railway Commission."

From what we have said heretofore in this opinion it seems perfectly obvious to us that the situation presented in the instant case is comparable with situations presented in rate cases of railroads and that the reasoning applied in these cases should likewise, that is, railroad cases and rate cases, apply in the instant case. See *Vaught* v. *East Tenn. Tel. Co.,* supra.

We are not holding that it is necessary for the Railroad & Public Utilities Commission to pass upon whether

or not there has been a discrimination under Code Section 3107 as is contended for by the appellee. What we have said is this: that since the Railroad & Public Utilities Commission have primary jurisdiction as to where the telephone company should serve, etc., according to the terms of the act, then until it is shown that this commission has authorized and directed the telephone company to act therein then the question of penalty under unreasonable discrimination could not be reached by the court because their requirement to do their first act, that is, the telephone company's requirement to serve these people would not be until they were directed to do so by the legislative and administrative body, that is, the Railroad & Public Utilities Commission. Until that is done clearly the courts would be without the first leg to stand on in holding that the utility was liable either at common law or under this statute for penalty for an unreasonable discrimination. They could not discriminate until they were obligated. It seems to us from what we have said above that the situation is completely answered and it is not necessary for us to say anything further about the matter.

Of course it is the duty of the telephone company, the public service company, to extend its facilities to all people who are willing to comply therewith and treat all alike and it cannot discriminate in favor of one of its patrons against another.

"To bring about such uniformity it is necessary that the rules and regulations of a public service commission, adopted pursuant to law, be observed by the companies." 52 Am. Jur., Sec. 85, p. 113.

See *Miller* v. *Central Carolina Telephone Co.*, 194 S. C. 327, 8 S. E. (2d) 355, and note on various discriminations under related statutes and the common law in 127 A. L. R.

beginning at page 728, all of which confirm the conclusion by us above reached.

■ In 52 Am. Jur. at page 115, Sec. 86, the following very pertinent statement is made:

"Telephone companies are not required to extend their facilities beyond such reasonable limits as they may prescribe for themselves, and if a telephone company in good faith determines for itself the limits in which it will conduct its business, and if, in accordance with the usual and approved methods of well-managed companies, it divides that area into districts to be served by wires carried in cables to a point within it convenient for distribution, there is no discrimination at common law or under statute unless an applicant within a particular district is discriminated against and others served within the same general area in like situation and under like conditions with himself."

The statement continues and as authority for this statement an opinion of the Circuit Court of Appeals, 6th Circuit, *Cumberland Telephone & Telegraph Co. v. Kelly,* 160 F. 316, 15 Ann. Cas. 1210, is cited. The author of this opinion is Judge Lurton a former member of this Court. In reading this opinion one will find many interesting observations with ample authorities cited which are interesting and apropos to the questions involved herein.

■ ■ The appellants have argued that since their bill was demurred to that the facts of discrimination and other well pleaded facts are admitted and that therefore it is not necessary that anything else be done because these things are admitted and all that is left to be done is to award damages to the appellants. This is a misconceived idea of what a demurrer to a bill means. It is true that the demurrer concedes all well pleaded

facts, *King* v. *Elrod,* 196 Tenn. 378, 268 S. W. (2d) 103, but when under these facts there are necessary things to be done for one to recover then it is necessary to see whether or not under these conceded facts there is the right to a recovery. A similar situation might be when one is sued on a note alleging that the note is dated a certain date and due at a certain time and then it is demurred to because it is shown on the face of the note that it is barred by the statute of limitations. Under such a situation the demurrer would be sustained, that is, it amounts to a plea of the statute of limitations and the court would then hold of course that the note is barred by the statute of limitations. The demurrer admits there was a note, of such a date and in such an amount and all of that but still this does not admit recovery on it because there is the plea in bar set up by use of the demurrer. We have a situation here where the well pleaded facts are admitted but admitting these well plead facts it is said that the court does not have jurisdiction because the matter has not been submitted to the Railroad & Public Utilities Commission. For the reasons expressed hereinabove we feel that the decree of the Chancellor is correct and it will be affirmed and suit dismissed at the cost of the appellants, and their sureties on their appeal bond.